# COURT OF APPEALS.

## July 11, 1917.

## THE PEOPLE v. THEODORE J. VOGELGESANG.

(221 N. Y. 290.)

PHYSICIANS *—PRACTICE OF MEDICINE WITHOUT A LICENSE—A PRACTITIONER WHO PRESCRIBES AND USES MEDICINES FOR WHICH HE RECEIVES PAY, NOT EXEMPT FROM PROCURING A LICENSE AS ONE ENGAGED IN PRACTICING "THE RELIGIOUS TENETS" OF HIS CHURCH.

A person who has no license to practice medicine, but, claiming to treat patients and cure diseases by means of the religious tenets of the Spiritualistic church, uses liniments and prescribes medicines for internal use, which are compounded and patented by himself, for which he receives pay, is not exempt from the statute (Public Health Law, Cons. Laws, ch. 45, § 173) prohibiting the practice of medicine without a license, as one engaged in " the practice of the religious tenets of any church." While a healer inculcates the faith of his church as a method of healing he is immune, but when, as in this case, he goes beyond that, puts his spiritual agencies aside and takes up the agencies of the flesh by the use of remedies operating physically, his immunity ceases and a verdict convicting him of the illegal practice of medicine is sustained by the evidence.

(People v. Vogelgesang, 173 App. Div. 919, affd.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered April 11, 1916, which affirmed a judgment of the Erie County Court affirming a judgment of the City Court of Buffalo rendered upon a verdict convicting the defendant of the crime of practicing medicine without a license.

The facts, so far as material, are stated in the opinion.

---

* See Note, Vols. 25, p. 538; 7, p. 4.

*Henry W. Killeen,* for appellant.   The trial court committed error in excluding the defendant's substantial defense and in making the whole·action hinge on the question of whether or not the defendant had received money for his ministrations to Haldeman.   (People v. Cole, 219 N. Y. 98.)

*Guy B. Moore, District Attorney (Clifford McLaughlin* of counsel), for respondent.   The court properly held throughout the trial and properly instructed the jury if they believed from the evidence that the defendant did for money attempt to treat or did treat and prescribe for any human disease, pain, injury or physical condition, it was their duty to find the· defendant guilty.   (L. 1909, chap. 49, § 160.)

CARDOZO, J.:

The defendant has been convicted of the illegal practice of medicine.   He says he is a spiritualist, and that he has practiced the religious tenets of his church.   If that is all that he has done, he has acted within his rights.   We think he has done more.

In February, 1915, one Albert Haldeman, then suffering from fatal heart disease, visited the defendant's office.   He paid four visits there, and received three visits at his own home. He died the next month.   The defendant rubbed his body with a liniment, and gave him medicine for internal use.   All this was done for pay.   The patient's wife accompanied him to the office.   She says the defendant never uttered a word about spiritualism.   The defendant, who was a witness, does not assert that he did.   A pamphlet, handed by him to his patient, is in evidence.   The title on the cover gives the defendant's name, and adds the words: " Specialist in all forms of chronic diseases; strictly confidential; consultation free."   Within the covers is a sketch of the defendant's life.   We are told that when eleven years old " he would get herbs and give them to

sick people, for he seemed to know what would be good for them." In later years the Erie County Medical Society complained of him, and a fine was imposed. "After that," says the sketch, " he joined the New York State Association of Spiritualists." The sketch is followed by many testimonials from patients. All or nearly all acclaim the virtue of his medicines. Not one of them betrays a consciousness that the supposed cure has been wrought through the power of religion. This was the pamphlet by which the defendant accredited' himself to Haldeman. One cannot find here the picture of the religious devotee. One can find only the picture of the unlicensed medical practitioner.

The picture is not changed when we read the defendant's testimony. On the stand he characterized himself as a therapeutic and spiritualist healer and dealer in patent medicines. He had patented them himself. He used a liniment, compounded of angle worms, turpentine, sweet oil and benzine. He says that while massaging the patient with this liniment he indulged in silent prayer. He also prescribed for internal use a medicine compounded of wine, beet tea and citrate of iron. The same medicine was used for everyone. He argues that all this must be excused because he had become a member of the Spiritualist church, and had been commissioned by that church as a spiritual healer. Some of the evidence which he offered on that subject was rejected. Enough was received, however, to prove that the church had recognized him as a healer, and that the practice of spiritual healing was a tenet of its faith. It would have been better if part of the rejected evidence had been admitted. But if all that was offered had been admitted, it could not justify the defendant's acts.

The statute prohibits the practice of medicine without a license, but excepts from its prohibition " the practice of the religious tenets of any church " (Public Health Law, § 173; Consol. Laws, chap. 45). We held in People v. Cole (219

N. Y. 98) that the exception protected the practitioners of Christian Science, who taught as part of their religion the healing power of mind. Even then we said that there were times when the question of their good faith must be submitted to a jury. But things were done by this defendant which no good faith could justify. He combined faith with patent medicine. If he invoked the power of spirit he did not forget to prescribe his drugs. " It is beyond all question or dispute," said Voltaire, " that magic words and ceremonies are quite capable of most effectually destroying a whole flock of sheep, if the words be accompanied by a sufficient quantity of arsenic " (Morley's Critical Miscellanies, III, p. 17). The law, in its protection of believers, has other cures in mind. The tenets to which it accords freedom, alike of practice and of profession, are not merely the tenets, but the *religious* tenets, of a church. The profession and practice of the religion must be itself the cure. The sufferer's mind must be brought into submission to the infinite mind, and in this must be the healing. The operation of the power of spirit must be, not indirect and remote, but direct and immediate. If that were not so, a body of men who claimed divine inspiration might prescribe drugs and perform surgical operations under cover of the law. While the healer inculcates the faith of the church as a method of healing, he is immune. When he goes beyond that, puts his spiritual agencies aside and takes up the agencies of the flesh, his immunity ceases. He is then competing with physicians on their own ground, using the same instrumentalities, and arrogating to himself the right to pursue the same methods without the same training.

The meaning of the act is made plain when we consider kindred legislation elsewhere. In varying phrases immunity is granted to those who practice their religious tenets, but always in such a form as to confine the exemption to spiritual ministrations. The statutes are collated in the briefs in People v. Cole (*supra*). Thus, in Maine (Rev. Sts. 1903, chap. 17,

§ 16; 1895, chap. 170), Massachusetts (R. L., chap. 76, § 9) and Connecticut (Gen. Sts. 1902, § 4514), the exemption is specifically declared to extend to those who practice Christian Science. In New Hampshire (L. 1915, chap. 167, § 17) it is declared to extend to " those who endeavor to prevent or cure disease or suffering by spiritual means or prayer." In Illinois (Hurd Rev. St. 1909, chap. 91, § 11, p. 1474), the act does not apply to " any person who ministers to or treats the sick or suffering by mental or spiritual means without the use of any drug or material remedy." Nearly the same language is used in the statutes of New Jersey (L. 1915, chap. 271, § 9), North Carolina (L. 1905, chap. 697), Colorado (Rev. Sts. 1908, § 6069), Virginia (L. 1912, chap. 237, § 11) and Michigan (L. 1913, chap. 368, § 8). There are like provisions in other States. Through all this legislation there runs a common purpose. The law exacts no license for ministration by prayer or by the power of religion. But one who heals by other agencies must have the training of the expert.

If that is the true view of the meaning of this statute, the defendant on his own confession has violated the law. Errors which otherwise might be important are thereby rendered harmless. The court charged the jury that the defendant had not the right to practice his religion for pay. There was doubtless error in the ruling. (People v. Cole, *supra*.) It is impossible, however, that the error should have affected the result, and we disregard it as immaterial. (Code Crim. Pro., § 542; People v. Swersky, 216 N. Y. 471, 481.)

The defendant was justly convicted, and the judgment should be affirmed.

CUDDEBACK, J. (dissenting):

I dissent. The City Court sentenced the defendant to imprisonment for six months. I think that when such extreme

punishment is inflicted for a minor offense the rules of law in favor of the accused should be somewhat strictly followed.

The prevailing opinion says that the judge of the City Court excluded evidence to show the practice of healing followed by the Spiritualist church which it would have been better to admit, and erroneously told the jury that a person has no right to practice his religious tenets for pay. Confessedly the defendant received pay for his services, so the latter error left the jury no option but to convict the defendant. I am not inclined to overlook the errors, and I vote to reverse.

HISCOCK, Ch. J., POUND, CRANE and ANDREWS, JJ., concur with CARDOZO, J., and HOGAN, J., concurs in result; CUDDEBACK, J., reads dissenting memorandum.

Judgment affirmed.