[No. 23387. Department One. March 9, 1932.]

THE STATE OF WASHINGTON, *Respondent*, v. LEO VERBON, *Appellant.*[1]

[1]Reported in 8 P. (2d) 1083.

*E. D. Phelan* and *R. J. Faussett,* for appellant.

*Robert M. Burgunder, Emmett G. Lenihan,* and *Frank Harrington,* for respondent.

MITCHELL, J.—A complaint was filed in the justice of the peace court, in Seattle, charging Leo Verbon with the crime of practicing medicine without a license, the charging part being as follows:

"He, said LEO VERBON, in the county of King, state of Washington, on or about the 8th day of June, A. D. 1930, wilfully and unlawfully did practice and hold himself out as practicing medicine in this state, in this, that he, the said LEO VERBON, did treat and pretend to treat one Carl Magnuson for disease and physical condition, to wit, cancer, by the use of drugs and medical preparations, without having at the time of so doing a valid unrevoked certificate issued to him by the board of state medical examiners of the state of Washington or by the state director of licenses of the state of Washington authorizing the said LEO VERBON to practice medicine within the state of Washington, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Washington."

He was found guilty and appealed to the superior court, where in a trial before a jury he was found guilty, and has appealed from a judgment on the verdict.

The statutes upon which the prosecution rests are Rem. Comp. Stat., §§ 10008 and 10018, which provide: The first one, that the holder of a certificate to practice medicine and surgery issued by the board of state medical examiners is authorized

". . . to use drugs or what are known as medicinal preparations in or upon human beings and to sever or penetrate the tissues of human beings and to use any and all other methods in the treatment of diseases, injuries, deformities or other physical or mental conditions."

The second one:

"Any person who shall practice or attempt to practice, or hold himself out as practicing medicine and surgery in this state, without having, at the time of so doing, a valid, unrevoked certificate as provided in this act, shall be guilty of a misdemeanor."

The appellant holds a certificate of appointment to teach in the church of the Illumination, under which it appears he was acting as preacher for a church in Seattle at the time he performed the acts complained of in this action, which acts he claims were permissible under the fourth amendment to the state constitution (Art. 1, § 11), which provides:

"Absolute freedom of conscience in all matters of religious sentiment, belief and worship, shall be guaranteed to every individual, and no one shall be molested or be disturbed in person or property on account of religion; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness or justify practices inconsistent with the peace and safety of the state."

That is, he claims to have been practicing his religious belief rather than practicing medicine. He had no license of any kind under the practice acts of the state relating to the treatment of the sick.

The particular case upon which the prosecution rests was appellant's continuous treatment of a patient the last two or three months before the patient's death from cancer, for a consideration of thirty dollars per month and the costs of medicines furnished. The services rendered by him consisted of local physical treatments and the furnishing and administering of drugs, for which he was paid at apparently ordinary prices, except that for one kind of drug one hundred dollars for each of two bottles was charged and collected.

The tenets and teachings of his church, as testified to by him, tersely stated, are:

"We believe that there is a purpose for our existence on earth, and that this soul or divine spark which is the soul in the human body, is there for a purpose. The body is a sort of specialized soil to receive it, in which it grows and develops; consequently, the body should be kept in perfect condition; consequently, through our teachings we always have held forward the healing of the ailing and the sick and bringing them to bodily perfection. We believe in the four-fold development; that is, taking care of the body, mind, spirit and the soul."

And, further, according to his testimony, that the bringing of the body to a normal or natural condition has to do with the spiritual side of the church, that "one is interwoven with the other;" and that, according to the teaching and literature of his church, he prepared, or procured from others, the articles administered to the patient in this case, which articles he claimed were not drugs, but "concentrates" of vegetables or herbs to be used and were used as a diet

or food to supply elements deficient in the body of the patient. In corroboration of appellant's claims for the teachings of his church, the secretary of his church in Seattle testified that

"It is one of the beliefs and teachings of the church that the pastor should aid and assist as a matter of diet and health and Christian obligation to his church, those that are sick or in such abnormal physical condition that they need assistance."

The testimony shows that appellant lived in Oregon at one time and, notwithstanding his church certificate to teach, he procured in that state a license to practice drugless therapeutics. Afterwards, he came to this state and tried to get a license as a drugless healer, but failed to pass the preliminary examination required by Laws of 1927, chap. 183, p. 219, Rem. 1927 Sup., §§ 10185-1 to 10185-8, commonly known as the basic science law. Thereupon, he commenced an action in the United States district court for certain relief, alleging that the basic science law of this state was unconstitutional, and that the state, by requiring him to take an examination under it before allowing him to apply for a license as a drugless healer, would prevent him from practicing his profession and earning a livelihood in this state, to his irreparable damage and injury.

Appellant was called in by the wife of the patient. She and other members of the family, and two trained nurses procured through his efforts, all testified that they understood he was a doctor and acting as such in the sense of being a physician, and not in a religious capacity in his treatments. Under his directions, the nurses kept the usual charts of the patient's condition and gave the medicines as directed by him. They all called him "Doctor," which he testified was proper

and authorized because he had taken one or more degrees of Doctor of Divinity, which, of course, is consonant with the holy orders, yet the evidence in the case shows that, in making out his several statements for monthly services and charges for drugs, and in endorsing checks received by him in payments therefor, he abbreviated his professional title as "Dr."

While the testimony on behalf of appellant, as already stated, was that the three substances administered by and under his directions were concentrates used as food, the state introduced convincing testimony of a recognized chemist and pharmacist, who examined and analyzed each of the substances, to the effect that each of them was a drug. He gave the medical or technical name of each and testified that it was found or listed in the National Formulary and Pharmacopoeia, or both. Assuming the testimony of the chemist to be true, as the jury had a right to find, the substances administered by the appellant were drugs and not foods as those terms are defined in Rem. Comp. Stat., § 6145.

In the first assignment of error, complaint is made of instruction numbered eight defining the term "drug." The instruction is in the language of the statute. Rem. Comp. Stat., § 6145.

It is also claimed that the court erred in refusing to give a requested instruction that, unless the jury found from the evidence that the defendant practiced medicine without a license, they should acquit. While it is true that the request as made was marked refused, the court, nevertheless, gave a correct instruction more full and complete upon the subject than the one requested. The same may be said of a requested instruction upon the subject of intent. That matter was fully covered by instructions that were given.

 It is claimed that:

"The court erred in sustaining the objection of defendant's offer of proof as to the teachings of the church of the Illumination as regards diet and health, of which church the defendant was pastor."

An offer of proof of the kind mentioned in the assignment was made, to which an objection was sustained. The ruling was not erroneous or prejudicial, in our opinion. The offer was substantially a repetition of the testimony of the appellant, already corroborated by another witness, upon a subject not in dispute, because the state neither denied nor attempted to deny the "teachings of the church of the Illumination as regards diet and health." What the state disputed was defendant's good faith, and that the substances administered internally were articles of diet or food.

 The subject matter of the offer was immaterial, anyway, because the controversy was not concerning what the church taught about diet and foods, but rather the kind of business in which the appellant was engaged. The situation is like that in the case of *Smith v. People*, 51 Colo. 270, 117 Pac. 612, where a preacher and healer of the sick under the auspices of the church of "The Divine Scientific Healing Mission," a corporation, on being prosecuted for practicing medicine without a license, made an offer of proof similar in principle to the one under consideration in the present case. The offer, upon being refused, was saved for the appeal, where, in approval of the ruling, the supreme court said:

"It is the nature of defendant's business, not the objects of the corporation or the tenets of his church, that is in controversy. The evidence shows he was practicing medicine within the definition of the statute and was using the title 'Healer' to his name to indi-

cate that he was engaged in the business of healing the sick.''

Nor does the exemption in Rem. Comp. Stat., §10024, to the effect that the act shall not be construed to apply to or interfere in any way with the practice of religion, cited and relied on by appellant, strengthen his defense. That language is but a recognition of the fourth amendment to the state constitution.

Under assignments of error numbered one and six, joined in appellant's argument, several questions of law have been discussed.

■ That the complaint does not state facts sufficient to constitute a crime or show that the defendant practiced medicine. The charge in the complaint is essentially and substantially in the language of the statute, and describes the acts constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended. It answers the test prescribed by statute and our cases discussing the statute. Rem. Comp. Stat., § 2055, subd. 2; *State v. Dechmann,* 57 Wash. 690, 107 Pac. 858; *State v. Greiner,* 63 Wash. 46, 114 Pac. 897; *State v. Sanford,* 89 Wash. 669, 154 Pac. 1114; *State v. Hogan,* 164 Wash. 403, 2 P. (2d) 702.

■ Appellant contends that the sections of the act relating to the practice of medicine and surgery upon which this prosecution is brought are unconstitutional, generally speaking. In common with the uniform holdings of other courts throughout the country with reference to similar statutes, we have consistently sustained the validity of our statutes. Some of our cases may be mentioned. In *State v. Greiner,* 63 Wash. 46, 114 Pac. 897, in answer to the defendant's contention that a statute intended to regulate his method of treatment of the sick was unconstitutional, it was said:

"If the practice has any beneficial purpose at all its purpose is to heal the sick and afflicted, and to regulate the practice of healing the sick and afflicted is unquestionably within the acknowledged powers of the state."

Still later, in discussing this matter in the case of *Laughney v. Maybury,* 145 Wash. 146, 259 Pac. 17, it was said:

"It may be stated, generally, that anyone has a right to pursue any lawful calling, yet, in respect to certain vocations not in themselves unlawful, including the practice of medicine and surgery, the right is necessarily and properly subject to legislative restrictions or regulations from consideration of public policy. They are vocations which, from time to time and in one way or another, very nearly concern the health, comfort, life and general welfare of every person, and statutes designed to accomplish such restrictions or regulations are founded upon the police power inherent in the state. *State v. Carey,* 4 Wash. 424, 30 Pac. 729; *State v. Greiner,* 63 Wash. 46, 114 Pac. 897; *State ex rel. Smith v. Board of Dental Examiners,* 31 Wash. 492, 72 Pac. 110. They do not violate any constitutional provision with reference to liberty or the rights of property as long as they are within other safeguards."

 Appellant contends that this prosecution violates his rights under the constitutional amendment with reference to religious freedom. Sight must not be lost of the difference between the exercise of religious belief and the practice of medicine. The enforcement of reasonable and necessary regulations in the practice of medicine, so commonly provided for in the statutes of the different states enacted under the general police power as essential in the preservation of the public health and general welfare, must not be taken to be violative of this provision of the constitution. The test is not that a drug may be administered without harm in a given case, but that the practice of pre-

scribing and administering drugs must be left to those whose qualifications and training, according to the standards fixed by the statute, prepare them for that service.

In *People v. Vogelgesang*, 221 N. Y. 290, 116 N. E. 977, the court of appeals of New York, in an opinion on this subject written by a judge just now appointed to the supreme court of the United States, said:

"The statute prohibits the practice of medicine without a license, but excepts from its prohibition 'the practice of the religious tenets of any church' (Public Health Law, § 173; Consol. Laws, ch. 45). We held in *People v. Cole* (219 N. Y. 98) that the exception protected the practitioners of Christian Science, who taught as part of their religion the healing power of mind. Even then we said that there were times when the question of their good faith must be submitted to a jury. But things were done by this defendant which no good faith could justify. He combined faith with patent medicine. If he invoked the power of spirit, he did not forget to prescribe his drugs. 'It is beyond all question or dispute,' said Voltaire, 'that magic words and ceremonies are quite capable of most effectually destroying a whole flock of sheep, if the words be accompanied by a sufficient quantity of arsenic' (Morley's Critical Miscellanies, III, p. 17). The law, in its protection of believers, has other cures in mind. The tenets to which it accords freedom, alike of practice and of profession, are not merely the tenets, but the *religious* tenets, of a church. The profession and practice of the religion must be itself the cure. The sufferer's mind must be brought into submission to the infinite mind, and in this must be the healing. The operation of the power of spirit must be, not indirect and remote, but direct and immediate. If that were not so, a body of men who claimed divine inspiration might prescribe drugs and perform surgical operations under cover of the law. While the healer inculcates the faith of the church as a method of healing, he is immune. When he goes beyond that, puts his spiritual agencies aside and takes up the agencies of the flesh, his im-

munity ceases. He is then competing with physicians on their own ground, using the same instrumentalities, and arrogating to himself the right to pursue the same methods without the same training.''

To the same effect, the supreme court of the United States, in *Davis v. Beason,* 133 U. S. 333, 33 L. Ed. 637, said:

''However free the exercise of religion may be, it must be subordinate to the criminal laws of the country, passed with reference to actions regarded by general consent as properly the subject of punitive legislation.''

A fair consideration of the record in this case leads to the conclusion that the case was one for the jury, and that the jury was fully justified in its verdict that the appellant, in doing the acts complained of, was engaged in the practice of medicine contrary to law.

Affirmed.

TOLMAN, C. J., PARKER, BEELER, and HERMAN, JJ., concur.