Richard L. GRAY, Plaintiff,

v.

GULF, MOBILE & OHIO RAILROAD COMPANY, a corporation and International Association of Machinists and Aerospace Workers, AFL–CIO, Defendants.

Civ. A. No. 5288–68–T.

United States District Court
S. D. Alabama, S. D.
May 29, 1969.

Boardman Noland, Takoma Park, Md., Whiteford S. Blakeney, Charlotte, N. C., Willis C. Darby, Jr., Mobile, Ala., for plaintiff.

William A. Kimbrough, Jr., Mobile, Ala., for defendant GM&O.

Allan R. Cameron, Mobile, Ala., Edward Hickey, Jr., and James L. Highsaw, Jr., Washington, D. C., for defendant Int. Assn. of Machinists & Aerospace Workers, AFL–CIO.

DANIEL HOLCOMBE THOMAS, Chief Judge.

This matter comes before the Court on the defendant's motion to dismiss, or alternatively, motion for summary judgment. There is no genuine dispute as to any material fact and the cause is properly before the Court for summary judgment. The facts are as follows:

On March 1, 1953, defendant Gulf, Mobile & Ohio Railroad Company, hereinafter referred to as GM&O and defendant International Association of Machinists and Aerospace Workers, AFL–CIO, hereinafter referred to as IAM, entered into an agreement pursuant to the provisions of Public Law 914 approved January 10, 1951, as Section 2, Eleventh, of the Railway Labor Act (45 U.S.C.A. Sec. 152, Eleventh). This union shop agreement is between the railroad and substantially all of the railway labor organizations representing employees of the railroad.

Plaintiff Richard L. Gray was discharged by GM&O on November 25, 1968, from his employment as a machinist with the defendant railroad for failure to comply with the provisions of this agreement. The agreement requires all employees of the railroad in the craft or class of machinist represented by the IAM, as a condition of their continued employment, become members of the IAM within sixty (60) calendar days from the date they become employees and thereafter to maintain membership in the IAM by tendering the periodic dues, initiation fees, and assessments uniformly required as a condition of acquiring or retaining membership. Gray admittedly refused to comply with the requirements of such agreement. His refusal was based upon the grounds that to do so would violate his religious convictions. Plaintiff sues for reinstatement to his employment, for an injunction against future discharge for failure to pay dues and fees to the IAM so long as such refusal is because of religious convictions, and for damages for his discharge. His complaint is based upon the grounds that the application of the provision of the union shop agreement to him constitutes a violation of the provisions of First, Fifth, Ninth, Tenth and Fourteenth Amendments to the United States Constitution.

The plaintiff does not ask the Court to declare Section 2, Eleventh, of the Railway Labor Act, unconstitutional. The constitutionality of the statute has been determined. Railway Employees' Department, American Federation of Labor, et al. v. Hanson, et al., 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956). It is plaintiff's contention that the statute is not to be so construed or applied as to attribute to Congress an intent to authorize a contract depriving a man of employment because of his holding to his genuine and sincere religious convictions. The sincerity of plaintiff's religious faith is not in dispute.

The facts show that plaintiff was initiated into membership to Lodge 342 of the IAM located in Bloomington, Illinois, in June of 1951, and plaintiff continued to be a member in good standing in that Lodge, including the periodic payment of dues, through February

1966. On December 14, 1964, Gray became an employee of the GM&O as a machinist. Since he was already a member of Lodge 342 of the IAM, he was in compliance with the provision of the union shop agreement and continued in compliance during his period of employment with GM&O.

In January 1962, the plaintiff sought and was granted a 90 day leave of absence in order that he might engage in work for his church organization. The plaintiff is a member of the Seventh Day Adventist Church. During his leave of absence, the plaintiff continued his membership in the IAM. Plaintiff returned to work for the railroad as machinist following the expiration of his leave and remained a member of the union until he terminated his employment with GM&O in 1966.

In February 1967, plaintiff Gray returned to the employment with the railroad and under the terms of the union shop agreement was required to comply with the terms of the agreement within sixty (60) calendar days. Plaintiff refused to do so, giving as the reasons his religious convictions. Plaintiff also refused to utilize an alternative arrangement of paying an initiation fee and regular monthly dues without becoming a member of the union. It cannot be disputed that the union and its representatives were more than liberal in attempting to secure plaintiff's membership in the IAM. However, plaintiff stood firm in his refusal, contending that he could not belong or financially support an organization which violated his religious convictions.

It is noted that plaintiff, in lieu of union dues, is willing to pay to a designated charity, money in an amount equal to the periodic union dues.

Following the prescribed and detailed procedure contained within the union shop agreement, plaintiff was notified in writing by the IAM that he was not in compliance with the agreement and unless he did so immediately, action necessary to enforce the agreement would be taken. Plaintiff continued to refuse to join or contribute to the union organization. Shortly thereafter, dismissal proceedings were begun and plaintiff received and exhausted all administrative remedies then available to him. He was held to be in noncompliance with the agreement at every stage of the proceedings and on or about November 25, 1968, plaintiff's employment with GM&O was terminated for failure to comply with the provisions of the union shop agreement. On December 16, 1968, this suit was filed seeking relief as more specifically set forth above.

To state in the simplest manner, the plaintiff moves this Court to hold that the application of the Railway Labor Act, Section 2, Eleventh, shall have no application to a railroad employee who feels that union membership or financial support to the union, violates his personal religious convictions. After careful examination of the latest Supreme Court interpretations of the Act, the Court finds the plaintiff's position to be untenable.

A full recitation of the Act's legislative history and purpose is not necessary. A complete legislative background is set forth in International Ass'n of Machinists v. Street, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1960).

It is sufficient to state that in enacting the legislation, Congress decided that public policy required the establishment of a collective bargaining agency for the effective operation of the industry.

"Congress, acting within the constitutional powers, has the final say on policy issues. If it acts unwisely, the electorate can make a change. The task of the judiciary ends once it appears that the legislative measure adopted is relevant or appropriate to the constitutional power which Congress exercises. The ingredients of industrial peace and stabilized labor-management relations are numerous and complex. They may well vary from age to age and from industry to industry. What would be needful one decade might be anathema the

next. The decision rests with the policy makers, not with the judiciary." *Hanson*, supra, p. 234, 76 S.Ct. p. 719.

The only conditions to union membership under the Act is the periodic payment of dues, initiation fees and assessments. The purpose underlying this requirement is obvious. The cost of collective bargaining and other legitimate union activities is to be borne by the individual members who receive the benefits. Plaintiff argues that the Supreme Court in *Hanson* and *Street* decisions have "left the door open" for an exception to this blanket requirement. The Court does not so interpret the decisions.

In *Hanson*, the Court held that Congress has the authority to create and establish the collective bargaining agent and that Congress has the power to authorize the requirement of financial support by the individual members.

"We only hold that the requirement for financial support of the collective-bargaining agency by *all* who receive the benefits of its work is within the power of Congress under the Commerce Clause and does not violate either the First or the Fifth Amendments."

Emphasis added, *Hanson*, p. 238, 76 S.Ct. p. 721.

In *Street*, the Supreme Court held that the union cannot expend dues of dissenting employees for political activities which the individual employee finds objectionable. The basis for the decision was that "political activities" were not included within the purposes contemplated by Congress in enacting the legislation.

The requirement of financial support for legitimate union activities remained in tact. As stated by Justice Brennan, delivering the opinion of the Court:

The appellees therefore remain obliged, as a condition of continued employment, to make the payments to their respective unions called for by the agreement. Their right of action stems not from constitutional limitations on Congress' power to authorize the union shop, but from § 2, Eleventh, itself. In other words, appellees' grievance stems from the spending of their funds for purposes not authorized by the Act in the face of their objection, not from the enforcement of the union-shop agreement by the mere collection of funds. If their money were used for purposes contemplated by § 2 Eleventh, the appellees would have no grievance at all. *Street*, supra p. 771, 81 S.Ct. p. 1801.

Justice Douglas concurring:

As long as they (union) act to promote the cause which justified bringing the group together, the individual cannot withdraw his financial support merely because he disagrees with the group's strategy. *Street*, supra p. 778, 81 S.Ct. p. 1805.

Plaintiff does not contend that certain union activities are ideologically objectionable or that certain activities are "outside" Congress' contemplated purposes, but asserts that being a member of a union or financially supporting a union, in itself, is objectionable to his principles.

The expressed Congressional intent in enacting the statute was to make all who share the benefits, share the cost. See: H.R.Rep. No. 2811, 81st Cong.2d Sess., p. 4. Also, the benefits gained through the collective bargaining cannot be denied to a non-member.

"Performance of these functions (collective bargaining) entails the expenditures of considerable funds. Moreover, this Court has held that under the statutory scheme, a union's status as exclusive bargaining representative carries with it the duty fairly and equitably to represent all employees of the craft or class, *union and nonunion*."

Emphasis added, *Street*, supra p. 761, 81 S.Ct. p. 1796.

The Seventh Day Adventist Church does not advocate that its members refrain from joining or supporting labor unions. The members, as individuals,

are the sole judge for their action. A church which, as part of its religious doctrine, opposes organized labor is not before the Court, but rather a sincere individual who finds such organization in conflict with his religious conscience. To allow plaintiff, and presumably all others who share similar beliefs, to maintain their railroad employment and to make periodic payments to designated charities, contributes nothing to the support of the union representation and circumvents the intent of Congress.

Complaints similar to plaintiff's have been presented to the Courts previously, only to be denied relief. Wicks v. Southern Pacific Company, 231 F.2d 130 (9th C.A.1956), cert. den., Wicks v. Brotherhood of Maintenance, etc., Southern Pac. Co., 351 U.S. 946, 76 S.Ct. 845, 100 L.Ed. 1471; Otten v. Baltimore & Ohio Railroad Company, 205 F.2d 58 (2nd C.A.1953); Otten v. Staten Island Rapid Transit Railway Company, 229 F.2d 919 (2nd C.A.1956), cert. den. 351 U.S. 983, 76 S.Ct. 1049, 100 L.Ed. 1497.

Plaintiff's religious scruples are not the first which has had to yield to the general applicability of a statute. Jacobson v. Massachusetts, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643; Shapiro v. Lyle, 30 F.2d 971; Reynolds v. United States, 98 U.S. 145, 25 L.Ed. 244; and People v. Vogelgesang, 221 N.Y. 290, 116 N.E. 977.

In this modern day world, conflicts between individual consciences and the applicability of national legislation are abundant. Just as individual conflicts are inevitable, individual compromises are necessary. The union shop agreement applies to all employees and is applied in a nondiscriminatory manner. All that is required of plaintiff is to contribute to the efforts of the union which procures through collective bargaining his employment benefits.

Therefore, it is ordered, adjudged and decreed by the Court that the defendant's motion for summary judgment should be and is hereby granted.

It is further ordered, adjudged and decreed by the Court that the plaintiff's prayer for interim relief should be and is hereby denied.

It is further ordered, adjudged and decreed by the Court that this cause is hereby dismissed.

Cost to be taxed against the plaintiff.