### HOMER WILSON v. STATE.

No. A-4364.    Opinion Filed Oct. 6, 1924.

(228 Pac. 1108.)

(Syllabus.)

1.    **Robbery—Information for Conjoint Robbery Held Sufficient.** Information charging the crime of robbery, conjointly committed, examined and held sufficient.

2. **Trial—Refusal of Incorrect and Inapplicable Instructions not Erroneous Where Given Instructions Cover Law of Case.** Where the instructions as a whole cover the law of the case, and are such as have heretofore been approved by this court in cases of like character, they are sufficient, and the refusal of the trial court to give certain requested instructions, some of which contain incorrect statements of law, and others of which are not applicable to the evidence, constitutes no ground for reversal.

3. **Robbery—Evidence Sustaining Conviction for Conjoint Robbery.** Evidence considered and held sufficient to support the verdict and judgment.

4. **Appeal and Error—Harmless Error—Admission of Incompetent Evidence.** The admission of incompetent evidence will not be held to be prejudicial where after an examination of the entire record it appears that the error complained of did not result in a miscarriage of justice.

Appeal from District Court, Craig County; A. C. Brewster, Judge.

Homer Wilson was convicted of robbery, and he appeals. Affirmed.

Homer Wilson was convicted of the crime of robbery, alleged to have been committed conjointly with one W. K. Decker upon one Claude Deshazo, in the town of Centralia, in Craig county, on or about the 5th day of February, 1921.

The information was filed in the district court in Craig county on the 31st day of May, 1921, a trial had in the month of November, 1921, judgment having been pronounced on the verdict on December 5, 1921. The petition in error and case-made were filed in this court on June 3, 1922.

A narrative statement of the state's case is about as follows:

"The defendant Homer Wilson was born and reared near the town of Centralia, and at the time of the commission of this offense was 21 years of age. He was a married man, but apparently was not living with his wife at the time. His

father, a widower, was living about two miles and a half east of the town of Centralia, but the defendant had not been living with him for some time prior to the commission of the offense. Claude Deshazo, the person robbed, was a barber and owned and operated a barber shop in the town of Centralia in the second story of a brick building on the east side of the Main street of said town, in which second story was also located the Masonic lodge room, which room was about 35 feet east and back of Deshazo's barber shop.

"The robbery occurred at between 11 and 12 o'clock at night on Saturday, February 5, 1921. At the time of the robbery, the defendant Homer Wilson was in the barber chair, and Deshazo was cutting his hair. There was no one else in the barber shop except a small boy, and in an adjoining room used for cleaning and pressing clothes was another barber, by the name of Newlin. Newlin was asleep at the time, and knew nothing of the robbery. It was upon this scene that the codefendant, W. K. Decker, entered, armed with a .45 Colts pistol, and wearing a long raincoat, a dark beaver hat, and a handkerchief tied up over his face. Decker commanded those in the barber shop to 'stick 'em up,' and after the parties had put their hands above their heads Decker proceeded to take a diamond ring and about $40 in money from Deshazo. Deshazo was also wearing a diamond stud in his necktie, and Decker reached around his neck and attempted to pick this out, but could not do it. Decker then ordered the defendant Wilson to remove the stud. Wilson experienced some difficulty in doing so, and Deshazo told him to take a pair of shears and cut it out, which he did, and handed the stud to Decker. Decker immediately backed out of the barber shop, and told the parties to keep their hands up for 15 minutes.

"After Decker had escaped an alarm was given to certain members of the Masonic lodge, which was in session, and also to other people in the town, and an automobile was procured at a garage, and Deshazo and the defendant and two other men got into an automobile and drove east of Centralia about seven or eight miles in search of the robber, but upon learning that nobody had gone in that direction they returned

to Centralia to the garage, where the defendant separated from the parties, stating that he was going to his father's home. At this time the defendant returned to Deshazo a pistol which Deshazo had given him just before they started out on the search for the robber. Decker was arrested the next day in a field not far from the home of the defendant's father. He admitted his guilt, and showed the parties who arrested him where he had cached the stolen goods and the pistol used. This was about 9 o'clock on Sunday morning, February 6, 1921.

"Shortly after his arrest Decker was taken to the town of Centralia to a restaurant to get something to eat. While Decker was in the restaurant the defendant Wilson came in and was also arrested, and a conversation occurred between Decker and Wilson, substantially to the following effect, according to the state's witnesses: Wilson told Decker he had seen him down near his home, and Decker replied, 'I did not know that was your home,' and asked Wilson if they had him arrested also, and Wilson told him they had, and Decker also told Wilson, 'I don't know you,' and Wilson said that he had never seen Decker before, and Decker said, 'Oh yes; you are the man that I took the $3 from,' and Wilson says, 'No; I didn't have but 35 cents, and you gave it back to me.'

"It is also disclosed by the evidence that Wilson and Decker had known each other for several months; that Decker was a painter by trade, and had been working in the town of Bigheart, Okla., at a time that Wilson was also working there; that they had roomed at the same rooming house at that town, had played pool together, and were frequently seen together in the town. That they disappeared in said town about a month previous to this robbery, and that on the night of their disappearance a robbery was also pulled off in Bigheart; in which robbery a man by the name of Hines was robbed, and a pistol taken from him by this defendant Wilson, and the pistol that was taken from Hines in the robbery at Bigheart by Wilson was the same pistol used by Decker in robbing Deshazo.

"Also it is disclosed by the state's evidence that shortly after the robbery of Hines in Bigheart, along about the first of January, 1921, Wilson and Decker were seen in the town of Jennings, Okla., together, and took their meals at the same restaurant in the town of Jennings. It is also disclosed by the state's evidence that on Saturday, February 5, 1921, the day of this robbery, Wilson and Decker were seen on several occasions near the home of the father of Wilson, and also together in the town of Centralia. That they had been in the barber shop of Deshazo together the morning of that day. That Decker had been there and got a shave; that Wilson also got a shave about 30 minutes before he got his hair cut; that after Wilson got his shave he went down stairs, stayed a few minutes, and then returned and concluded he would take a hair cut, and Deshazo testified that Wilson did not need a hair cut at that time.

"Wilson as a witness in his own behalf admitted his presence in the barber shop at the time of the robbery, and admitted his acquaintance with Decker, but denied any participation in the robbery of Hines at Bigheart, and testified that he left Bigheart on the afternoon of the day that Hines was robbed that night. He admits being with Decker in the town of Jennings, but denies knowing anything about Decker's presence in the town of Centralia, and denies having been with him in the town of Centralia on the occasion testified to by the state's witnesses.

"To summarize the effect of the state's evidence it is that Decker actually committed the robbery as the result of a conspiracy between him and Wilson, and that Wilson was present for the purpose of aiding Decker in its commission. That they had for some time been partners in the commission of crimes of this character, and that Decker intended to divide the spoils with Wilson as a part of the plan. The evidence of the state, both direct and circumstantial, in the opinion of this court points unerringly to this conclusion. The admissions made by the defendant as a witness in his own behalf against his interest tend also to fortify the state's position, as well as do his contradictory statements."

Theo. D. B. Frear, for plaintiff in error.

George F. Short, Atty. Gen., and G. B. Fulton, Asst. Atty. Gen., for the State.

MATSON, P. J. (after stating the facts as above). It is first contended that the trial court erred in overruling the demurrer to the information. The charging part of the information is as follows:

"That the said W. K. Decker and the said Homer Wilson acting conjointly and together, in the county and state aforesaid, on the 5th day of February, 1921, did knowingly, willfully, unlawfully, wrongfully, feloniously, conjointly, and together, make an assault in and upon one Claude Deshazo with a certain weapon, to wit, a revolver, then and thereby putting the said Claude Deshazo in fear 'of an immediate injury to his life and person, by threatening to shoot the said Claude Deshazo, and did then and there by use of said force and putting in fear, unlawfully, willfully, wrongfully, and feloniously, and against the will of him, the said Claude Deshazo, take, steal, and carry away from the person and possession of him, the said Claude Deshazo, certain personal property, to wit, one diamond set ring, one diamond set shirt stud, and $40 lawful money of the United States of America, with the unlawful, wrongful and felonious intent then and there on the part of them, the said W. K. Decker and Homer Wilson, to rob and deprive the said Claude Deshazo of the aforesaid property, and to convert the same to the use and benefit of them, the said W. K. Decker and Homer Wilson, contrary to the form of the statutes, in such cases made and provided, and against the peace and dignity of the state of Oklahoma."

In this connection it is first contended that the information fails to state the facts showing a conspiracy between Wilson and his codefendant Decker. This is unnecessary under the statutory provisions of this state. Section 2574, Compiled Statutes 1921.

Further it is contended that the information is fatally defective in that it nowhere lays the ownership of the property stolen. The information charges:

"Did take, steal, and carry away from the person and possession of him, the said Claude Deshazo, certain personal property, to wit, one diamond set ring, one diamond set shirt stud, and $40 lawful money of the United States of America, with the unlawful, willful, wrongful and felonious intent then and there on the part of them, the said W. K. Decker and Homer Wilson, to rob and deprive the said Claude Deshazo of the aforesaid property, and to convert the same to the use and benefit of them the said W. K. Decker and Homer Wilson."

It is not necessary in a robbery case to allege and prove that the property belonged to the party from whose possession it was forcibly taken. All that is requisite is an allegation that it belongs to some other person than the defendant or defendants. The allegations above set forth are sufficient in themselves to negative the idea that the property in the possession of Deshazo alleged to have been forcibly taken from his person was not the property of Decker and Wilson.

An examination of this information convinces the court that the acts constituting the crime are set forth therein with sufficient certainty to apprise the defendant of the offense charged against him and that it includes all the elements of robbery as defined by our statute, and that the trial court did not err in overruling the demurrer to the information.

Complaint is also made of certain of the court's instructions which were excepted to by the defendant. The instructions complained of have been examined and considered in connection with the evidence in the case. We find in-

structions to cover the law as applicable to the evidence, and are such as have heretofore been approved in cases of this character. The instructions requested and refused by the court were either incorrect statements of the law or not applicable to the evidence, and were properly refused.

It is also contended that the evidence is insufficient in that it does not show that the person robbed was at any time in fear of this defendant. The theory of the state was that this robbery was the result of a conspiracy previously entered into between this defendant and his codefendant W. K. Decker; that the purpose of the presence of this defendant in the barber shop at the time of the commission of the robbery was to aid and assist his codefendant Decker therein should the occasion require active participation therein by this defendant. The circumstantial evidence all points to the fact that this robbery was planned by the defendant and his codefendant Decker; that this defendant participated therein by acting as a lookout for Decker, and by locating himself at the scene of the robbery at the time of its commission. That this defendant first went to the barber shop that night and got a shave and then went down stairs, and in a short time returned to get a hair cut, is significant. His excuse for leaving after the shave, that he had taken medicine and had a pressing call of nature is evidently an afterthought on his part, because he admits that when he went down from the barber shop after getting a shave he stood at the foot of the stairs and talked for five or ten minutes with some one who was then leaving the barber shop. Evidently the jury did not believe he left there for the purpose of answering the call of nature, but rather to inform his codefendant that the coast was clear, and that everybody had left the barber shop but one small boy.

The inferences properly to be deduced from the circumstantial evidence against this defendant were for the jury,

and this court has no hesitancy in stating that the jury reached the right conclusion under the evidence in this case.

The only semblance of error which we consider in any degree prejudicial to this defendant was the admission of the evidence of the details of the robbery previously committed by him and his codefendant Decker on one Hines at Bigheart, Okla. The fact of the commission of this robbery was admissible in order to identify this defendant, and to show his acquaintance with the defendant Decker, and to connect this defendant with the revolver used by Decker in this particular robbery, and as much of the details of the Bigheart robbery as was necessary for those purposes was properly admitted, but other matters of detail connected with the Bigheart robbery, having no tendency to establish the matters above indicated, were unnecessary and irrelevant to the issues in this case, but in view of the provisions of section 2822, Compiled Statutes 1921, which prohibits this court from reversing any judgment, among other grounds, because of the improper admission of evidence, unless the error complained of has probably resulted in a miscarriage of justice, and constitutes a substantial violation of a constitutional or statutory right, this alleged error is considered of not sufficient prejudice to require the reversal of this judgment.

The judgment is therefore affirmed.

BESSEY and DOYLE, JJ., concur.