[No. 23132. Department One. September 8, 1931.]

THE STATE OF WASHINGTON, *Respondent*, v. DAN HOGAN, *Appellant*.[1]

[1]Reported in 2 P. (2d) 702.

404

*John F. Dore,* for appellant.

*Robert M. Burgunder, Ewing D. Colvin,* and *Everett Ellis,* for respondent.

MITCHELL, J.—The appellant was convicted and sentenced to the penitentiary on the verdict of a jury finding him guilty on counts II, V and VIII of an information filed on April 11, 1930. The sentence imposed was for not less than one nor more than five years on each count, to run concurrently. Each count rests upon Rem. Comp. Stat., § 2344, as follows:

"Every person who shall allow a prisoner lawfully in his custody to escape, or shall connive at or assist such escape, or shall omit any act or duty by reason of which omission such escape is occasioned, contributed to or assisted, shall, if he connive at or assist such escape, be guilty of a felony; and in any other case, of a gross misdemeanor."

Count II of the information was in the following language:

"That on or about the 4th day of March A. D. 1930, one Frank Williams was then and there a prisoner in the city jail of the city of Seattle, under and by virtue of a judgment and sentence of the police court of the city of Seattle, imposed and entered on the 13th day of February A. D. 1930, wherein and whereby said Frank Williams was adjudged guilty of violating the liquor ordinances of the city of Seattle, and was sentenced to serve a period of sixty (60) days in the city jail of the city of Seattle and in addition thereto, to pay a fine of two hundred and fifty dollars ($250.00) and he, the said DAN HOGAN, then and there being a duly appointed and qualified police officer of the city of Seattle, and as such having the said Frank Williams lawfully in his custody did then and there wilfully, unlawfully and feloniously allow, connive at and assist the said Frank Williams to unlawfully escape from his custody and from the said city jail."

Count V is similar, though it relates to the release, by the assistance of the appellant, of Harold E. Mitchell, who was committed to the city jail June 7, 1929, under sentence of ten days and to pay a fine of fifty dollars for violating an ordinance of the city against reckless driving. Count VIII is also similar, though it relates to appellant's assistance in the release of George Ishihara, committed to the city jail on August 27, 1929, under sentence of ten days and to pay a fine of fifty dollars for violating an ordinance of the city against reckless driving.

On the appeal, it is contended that a demurrer to each count was improperly overruled. It is argued (1) that the word "prisoner" in Rem. Comp. Stat., § 2344, refers only to one who has been convicted of violating a state criminal statute and not a city ordinance; and (2) that the facts stated in the information

do not sufficiently inform the defendant with what he is charged.

It is a sufficient answer to the first argument to say that the act creating and fixing the punishment for this offense uses language that is both plain and unqualified, so that there is no need here of reviewing authorities in other jurisdictions discussing situations and language differing from those in this case. The section of our statute in question is comprehensive, and the only limitation upon the character of restraint referred to is that it shall be lawful custody. It says nothing about the authority under which a person may be held, except that of *lawful custody,* and applies alike to the lawful custody of those convicted or lawfully held for all classes of crimes, whether felonies or misdemeanors. The triviality of the offenses for which persons are in custody is not to be taken as the test or measure of the offense of the person having lawful custody of them in unlawfully and feloniously allowing, conniving at and assisting them to escape. No contention is made that the prisoners referred to were not lawfully committed to the city jail.

The second argument on behalf of the appellant on the demurrer is answered by the well recognized and repeated rule announced in *State v. Turner,* 10 Wash. 94, 38 Pac. 864, where a similar argument was made upon a demurrer to an information charging embezzlement. The penal statute involved in that case contains only common words that are easily understood, and the information was in the same kind of language and to the same effect as the statute. Indeed, the court said, "It will be noticed that the crime charged here is charged in the language of the statute," and in holding the information sufficient as against the demurrer the court, after stating that, by the weight of authority, it is sufficient in cases of em-

bezzlement to charge the crime in the language of the statute, said:

"But as this court has frequently said, decisions based upon the common law can be of little service in determining the sufficiency of an indictment under the provisions of our reformed practice, for the Code itself specifically avers the requirements of the information and asserts that, so far as the question involved here is concerned, whenever a person of common understanding, shall know what he is charged with, the information shall be sufficient. The experience of advancing ages culminated in legislation that has done away with the refinements of technical pleading so far as criminal actions are concerned, refinements which were originally intended as safeguards to the innocent, but the practical operation of which has been to protect the guilty from merited punishment. These refinements have given place to the simplicity of a statement of facts, and the law in the interest of justice to the state and to society has laid down the plain test mentioned above. And this is a test which appeals to common sense. Will any one say that in this instance the respondent has been misled, in any possible way by any omission in this indictment; that he does not know what he is charged with; that he is left in the dark so far as the preparation of his defense is concerned on the merits of the case? We think not. Determined by this test, then, we think the information in this case is amply sufficient, and that the court erred in sustaining the demurrer to the indictment."

So in this case, as to the language of both the statute and the information. They contain only common words, and are alike, so that, tested by either the rule of charging the crime in the language of the statute, or that a person of common understanding shall know what he is charged with, the information is sufficient as against the general demurrer.

The jury was instructed in paragraph 16 as follows:

"You are instructed that the escaping of a prisoner, as referred to in these instructions and in the information, does not necessarily mean the forceful breaking out of jail of such prisoner. On the contrary, the information in this case charges the defendant with voluntarily permitting one known as Frank Williams, one Harold E. Mitchell and one George Ishihara to escape from his custody and the custody of the city jail and to go at large. You are instructed that the word 'escape' means to go at large without a guard; to obtain their freedom prior to their release or discharge in accordance with law."

The use of the words "you are instructed that the word 'escape' means to go at large without a guard" constitutes an assignment of error. Not those words in connection with all other instructions given, nor even in connection with other language in paragraph 16, but those words alone are seized upon as the basis for the assignment, and rather sensitive and technical arguments are made upon it, such as that the words would include the service of a prison trusty on an errand for the keeper of the prison, beyond the prison enclosure.

The assignment constitutes an instance of taking a few words from their setting and, at the same time, forgetting or ignoring the particulars of the case to which they are addressed. In the first place, there is nothing wrong or misleading in the language of itself, as applied to the facts in this case. Besides, the prisoner Williams, in order to get two hundred dollars for the appellant to unlawfully assist the prisoner's escape from custody, as it is charged, was allowed by the appellant, under the care of a guard, to go out of the jail to get that amount of money. The appellant, upon testifying that Williams said he could get money if allowed to go out and see a friend, further testified:

"Q. And did you make it possible for him to get out? A. Yes, sir. Q. Whom did you send him out

with? A. A police officer. Q. Well, do you recollect his name? A. Officer Stanhope. Q. And did Williams bring back any money? A. Yes, sir. Q. How much did he bring back? A. One hundred and fifty dollars.''

He further testified that a day or two later Williams went out and brought in to him fifty dollars more.

Thus it appears, under the facts and circumstances before the court and jury, that, rather than complain of these particular words of the instructions as constituting error, the use of them should be appreciated as a protection of the rights of the appellant—because, in legal effect, the jury was told that they were not at liberty to argue or believe that Williams' being allowed by the appellant to go out in the care of a policeman to get money which was delivered to the appellant, amounted to an escape as that word is used in the statute and the information. Especially must it be so held, and that there was no error, in consideration of the language immediately following, whereby the full sentence reads:

''You are instructed that the word 'escape' means to go at large without a guard; to obtain their freedom prior to their release or discharge in accordance with law.''

It is further contended that the judgment should be set aside because the relation of the appellant to the city jail was not such as to constitute him a person who shall allow a prisoner lawfully in his custody to escape, as contemplated by the statute. It is argued that, as he was neither chief of police nor superintendent of the jail, but only what was termed a desk sergeant at the jail, therefore he was not a person lawfully having custody of the prisoners mentioned.

With this argument we cannot agree. Appellant had occupied his position for a number of years, and, by

his own testimony and that of others connected with the jail, it appeared that thousands of prisoners passed through the city jail each year; that a record was made of the discharge of all prisoners that went out; that there were several, including the appellant, who signed written releases for the discharge of prisoners (as was done by the appellant in this case); and that he had done so in actual practice for years, sometimes giving forty or fifty orders for releases in one day, all of which were respected, as he knew they would be. Under these circumstances, we think the appellant was within the purview of the statute against a person conniving at or assisting in the escape of a person lawfully in his custody. If, in fact and in practice, he had custody to the extent he could successfully order the discharge of a prisoner, then he had custody of the prisoner under the law against his conniving at or assisting one to escape.

■ Frank Williams testified at the trial on behalf of the state. At that time, he said his true name was Verne L. Hedrick. He was the person whose name was mentioned in the information, and endorsed on it as a witness, as Frank Williams. Appellant objected to his testifying, because his true name was not given in naming him on the information as a witness. But the testimony shows that, about the time he committed the crime for which he was sent to jail, he did business in the name of and was known as Frank Williams; the appellant knew him at the city jail and afterwards and transacted all of his business with him as Frank Williams. However, upon it appearing at the trial that the witness claimed his true name was other than that by which all of the parties had theretofore known him, the court, without allowing him to give any substantial testimony concerning the case, postponed or con-

tinued the further examination of the witness for three days, at which latter date he was examined and cross-examined without any renewed objection or claim of surprise on the part of the appellant. Under these circumstances, there was, in our opinion, no error in allowing the witness to testify.

On the merits, there was sufficient evidence to satisfy the jury in believing that, for money considerations paid directly to appellant, he assisted Frank Williams and Harold E. Mitchell, by furnishing on behalf of each a written order for his discharge which had the effect, as he knew it would have, of procuring the freedom of the prisoner prior to the completion of his jail sentence or the payment of the fine imposed.

The charge of assisting George Ishihara was not sustained, in our opinion, by evidence sufficient to take the case to the jury. True, the appellant signed an order for his release on the day he was committed to jail and without the payment of the fine imposed, but, under the evidence, such orders were frequently signed, formally, upon the advice or direction of another than the person signing such order. Ishihara and appellant each testified that he had never seen the other, that he remembered; that they had had no dealing of any kind with each other, nor was there any proof of consideration of any kind paid to or promised the appellant on behalf of Ishihara. No motive whatever on the part of the appellant was shown to support this charge against him of unlawful and felonious conduct. Appellant's motion to dismiss as to this count for the lack of evidence to sustain it, should have been granted.

The judgment as to counts II and V, relating to assisting Frank Williams and Harold E. Mitchell to escape from custody, is affirmed. The judgment is re-

versed as to the charge contained in count VIII, with reference to assisting George Ishihara to escape, with directions to dismiss the action as to this count.

TOLMAN, C. J., PARKER, BEALS, and HOLCOMB, JJ., concur.

