# JUNE 14, 1939

BERKLEY BARFIELD V. THE STATE.

No. 20364. Delivered April 26, 1939.
Rehearing Denied June 14, 1939.

The opinion states the case.

*Sam W. Davis,* of Houston, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The conviction is for robbery; the punishment assessed is confinement in the state penitentiary for a term of five years.

It was charged in the indictment that Berkley Barfield and Fred L. Carson, on or about the 28th day of August, 1938, in the County of Harris and State of Texas, in and upon Frank Jewett did make an assault, and did then and there by said assault and by violence and by putting the said Frank Jewett in fear of life and bodily injury, fraudulently and against the will of the said Frank Jewett, take from the person and possession of the said Frank Jewett, one hundred and sixty-seven dollars in money, etc.

Appellant's main contention is that Frank Jewett was not the owner of the property, nor the party in possession thereof at the time it was taken.

It clearly appears from the record that Jewett was employed by Harry Hurst and Jim Welsh, the managers of the Houston Labor Temple, as a porter and night watchman. His duties began at seven p. m. and ended at seven a. m., during which time he was in charge of the building and had the care, custody and control over it and its contents. He handled no money and made no contracts; nor did he incur any obligations on behalf of the Labor Temple and paid no bills for them.

On the night in question, Jewett was alone at the Labor Temple when he received a telephone call from a man who gave his name as Ragsdale, who stated that he had a contract in his desk at the Labor Temple which he wanted, and was sending a friend for it who would hold a piece of paper up to the door and let him know that he was the person being sent for the contract. The man appeared and held up a paper and Jewett let him in. As soon as he had been admitted, he pointed a pistol at Jewett and commanded him to step over to a "popcorn parcher" which Jewett did. Barfield and Carson were then called to come in. Jewett was then commanded by the man with the pistol to lie down on the floor with his face down. The man with the pistol remained to guard him, while the other two men went to the locker located in a room about forty feet away, broke it and took therefrom about $172. The three men then marched him into a room, locked it and disappeared. Jewett had a key in his pocket and unlocked the door. He then ran out, gave the alarm and called the police. A short time thereafter appellant was arrested, taken to the police station and made a statement, naming the other parties who had participated in the commission of the offense. He also informed

the officers as to the whereabouts of a portion of his loot, and a part of it was recovered. Appellant did not testify or offer any affirmative defense.

He contends that there is a variance between the proof and the allegations in the indictment as to the taking of the property from the person and possession of Jewett. It is his contention that the evidence shows that Jewett was merely a caretaker and did not have the care, custody and control of the Labor Temple.

A careful review of the testimony leads us to a different conclusion. The testimony shows that Jewett was in charge of said Labor Temple each night from seven p. m. to seven a. m. and spent each night therein. What was the object of his being in the building the entire night? It was his duty to protect the property therein from theft and the like. He was more than a mere caretaker and porter whose only duty was to clean up. He was placed in actual control and possession of the building and its contents.

In the case of Michaels v. State, 120 Texas Crim. Rep., 553, 49 S. W. (2d) 444, a question somewhat similar to the one under consideration was presented. In that case one, Jordan, was the owner of a garage. He had a negro boy, Madison, employed, who was left in charge of the garage at night. During the early part of the night while the negro was alone, appellant and another party appeared at the garage, drew a pistol on Madison and ordered him to get into a car that had been left there by a Mr. Keys to be stored for the night. Madison complied with the command, and with the appellant driving, the parties drove away. Appellant took the position that the car was taken from the possession of Keys and not from Madison. This court held that under this state of facts there was no variance and cited the case of Reese v. State, 239 S. W., 619. In the latter case, the court referred to the case of O'Donnell v. People, 224 Ill., 218. There, one Joseph E. Dorgan was a watchman at the station of the Western Indiana Railroad. He was alone in the station when appellant and his confederates approached the door. Dorgan opened the door and one of the men jumped into the waiting room of the station, grabbed Dorgan and a struggle ensued. Dorgan succeeded in obtaining a pistol which was in the room, and all the parties fled. Upon the trial, appellant requested the court to instruct the jury that in order to convict him of an assault with intent to rob, the jury must believe, beyond a reasonable doubt, that the assault was committed with the specific intent and for the

purpose of robbing Dorgan of *his* goods and chattels, THEN AND THERE BEING ON HIS PERSON. It was his contention that since the evidence showed that the parties intended to steal from the *safe* in the station, the proof would not sustain a conviction for an assault to rob Dorgan, the watchman. The trial court declined to give this instruction and the Supreme Court of that State sustained the trial court's ruling.

In the case of State v. Montgomery 67 L. R. A., 343, 181 Mo. 19, it was stated that at common law it was never held that the property taken must belong to the person robbed. It was sufficient that the property belonged to the person robbed or some third person. As against the robber, it would seem that a servant has the same right to defend his possession of property left in his care as the owner would have.

It occurs to us that since the robber had the specific intent to obtain the property in question by the use of violence from the possession of the person robbed, whether such person was the owner thereof or not would not change the offense from robbery to theft. A person unlawfully deprived of the property which is in his care and under his control is entitled to its possession as against the robber. We deem the evidence sufficient to sustain the conviction.

Appellant challenges the correctness of the court's definition of the term "possession." The court defined "possession" to mean "the exercise of actual control, care and management of property, whether lawful or not; and it is sufficient in law when a person is charged with the offense of robbery by assault that the indictment allege the ownership in a person having possession of the property taken, as possession has been above defined, and it is not necessary that he be the absolute owner of said property." Appellant objected to that part of the instruction following the definition of "possession" because it was an instruction on the weight of the evidence, and no where in the charge did the court instruct the jury that if they should believe from the evidence that Jewett was only a custodian, and did not have the actual care, control and management of the property alleged to have been taken, or if they had a reasonable doubt thereof to acquit him.

We fail to see where it was a charge on the weight of the evidence. The uncontradicted testimony shows that Jewett was left in charge of the building and its contents to keep, guard and protect the same. Against what? To keep it from walking or crawling away? Certainly not. His duty was to

guard and protect it from theft and robbery. That was one of the duties for which he was employed, and in doing so he had a legal right to resort to as much force as was necessary to protect it as against any unwelcome intruder.

The distinguishing feature between theft and robbery is that in theft the property is fraudulently taken from the possession of the owner or from some person holding the same for him; it is not necessary that the property be in the actual possession of the owner or the person holding the same for him; it is sufficient if he is in constructive possession thereof. In robbery the property must be taken by force and violence, not necessarily from the owner, but from any person in possession thereof whose right of possession is superior to that of the robber. The very fact that property is taken from a person by the use of firearms, violence or threatened violence is, within itself, sufficient to show that the person from whom it was taken was in possession thereof. There would be no occasion to resort to the use of violence directed to a person who is not in possession of property; nor could property be acquired by the means stated from a person who did not have possession thereof.

Under the facts of this case we do not believe the matter complained of shows error. In support of what we have said, we refer to the case of People v. Dean, 66 Cal. App. Rep., 602. In that case the facts are almost identical with the facts in the instant case. See also State v. Fitzsimmons, (Mo.) 89 S. W. (2d), 670; State v. Montgomery, 79 S. W. 693, (Mo.) ; Jenkins v. State, 198 S. W. 878.

The other matters complained of by appellant have been examined by us and are deemed to be without merit.

No error of a reversible nature appearing, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON MOTION FOR REHEARING.

HAWKINS, Judge.

Appellant takes the position that we ought to hold that "possession" in robbery means the same thing as in theft as defined in Art. 1415 P. C.; and that Jewett was merely a "cus-

todian" or watchman, and that the property taken was not, therefore in his "possession" as charged.

Appellant cites us to Gideon v. State, 119 Texas Cr. R. 612, 44 S. W. (2d) 687; Burgess v. State, 114 Texas Cr. R. 664, 26 S. W. (2d) 299; Boatright v. State, 121 Texas Cr. R. 578, 51 S. W. (2d) 311; as supporting his position that property in the mere "custody" of a servant or watchman is not in his "possession" in contemplation of Art. 1415. We observe that in each of the cases mentioned accused was charged with theft and not with robbery. Appellant's position is apparently supported by the expression in the opinion on rehearing in Reese v. State, 91 Texas Cr. R. 457, 239 S. W. 619 that 'possession under the robbery statute would seem in no way different from that under the theft statute." Said expression in most cases under the facts would probably be true, and was undoubtedly so in that case. The use of the expression in Reese's case seems to have been prompted by a quotation from Williams v. State, 34 Texas Cr. R. 531, 31 S. W. 406. The conviction there was not under the general robbery statute, but under Art. 1409 P. C., which reads as follows: "If any person, by threatening to do some illegal act injurious to the character, person or property of another, shall fraudulently induce the person so threatened to deliver to him any property, with intent to appropriate the same to his own use, he shall be imprisoned in the penitentiary not less than two nor more than five years."

When the statutes on robbery and theft are analyzed we have been unable to escape the conclusion that the term "possession" as used in the definition of robbery has a somewhat broader meaning than as restricted in the statute relating to theft. The offense of robbery is complete if a person by assault, etc., fraudulently takes from the person or "possession" of *another* any property. (Art. 1403 P. C.) In charging the crime it is not necessary to negative consent of the person from whom the property is taken nor to allege the value of the property. The purpose of the statute seems aimed at the protection of the party robbed rather than security of the property taken. In theft the property stolen must be taken from the possession of the owner or from the possession of some person holding it for the owner. (Art. 1410 P. C.) Possession of the person *"so unlawfully deprived of property"*—that is, by *theft* —is constituted by the exercise of actual control, care and management. (Art. 1415 P. C.) The Legislature did not see proper to apply such definition of "possession" to robbery— although it might have done so—but restricted it to theft cases.

As early as 1857 it appears that the court sensed a distinc-

tion in the character of possession in robbery and theft. In Smedley v. State, 30 Texas, 214, we find the following expression. "It should clearly appear from the indictment that the article taken belongs to some person other than the accused, or that the party deprived of the possession through violence is *entitled to such possession as against the defendant.*"

The same idea is expressed in Barnes v. State, 9 Texas Cr. App. 128, citing Smedley's case. It appears from the language in Williams v. State, 37 Texas Cr. R. 147, that somewhat the same idea was in the court's mind. There it was charged that Mrs. Bleick was robbed and that she owned the property taken. In the course of the opinion it is said, "Whether or not this would have constituted a variance, if it had been shown that the property was not in her actual care and control, is not necessary for us to discuss." Then follows a short statement of the facts, after which this language is found. *"Even in a case of theft,* we are of opinion that this testimony would have constituted her the owner in law." The inference appears to be that in the mind of the writer there was a distinction as to possession in robbery and theft.

We regard the holding in Briggs v. State, 108 Texas Cr. R. 544, 2 S. W. (2d) 238, as direct authority supporting our original opinion. The facts are not set out in the opinion in the Briggs case to any extent, but an examination of the original record shows the facts to be as follows: Pena, the man there charged to have been robbed and the property taken from his possession, testified as follows: "I did general work up there as night watchman (for Mr. Gonzales) when they were away I was on the lookout when they weren't at home until they came home. When they left they left me in charge of the house to look after it and to take charge of the premises."

Mr. Gonzales, the owner of the house in which the robbery was committed, testified as follows: "We had this Mexican Blas Pena employed at that time, we have a bunch of dogs in the house and we have a room in the house where he slept and he was to take care of the house when we left, as a watchman. * * * Blas Pena was a watchman, in charge of the property to protect it and keep it. * * * I had the Mexican, Blas Pena, there as a watchman, we have two ladies that work in the house as servants. Once in a while, of course, he would do something else; we have three or four or five dogs and sometimes he helps the servants if they need help to tend to them but we have him to watch the house more than anything else because we generally go to the show at nights after nine

264

o'clock and he generally staid in the house until we came back. Sometimes he worked a little in the daytime, we had a room for him to stay there. He worked very little about the place, most always as a watchman, that's all."

The indictment there charged the property to have been taken from the person and possession of Pena. In the motion for a preemptory instructian it was urged that there was no evidence showing that any property was taken from the person of Pena. The trial judge in qualifying the bill complaining of the refusal to instruct a verdict of not guilty stated that the uncontroverted testimony of the State showed that Pena *as watchman* had the actual custody and control of the premises where the offense occurred in the absence of Gonzales from the premises, and that the property taken was therefore *in the possession of Pena in so far as a robbery of the person in charge was concerned.* It is clear from the opinion in the Briggs case that this court adopted the views of the trial court in the matter.

It follows from what has been said that in our opinion under the facts here present the motion for rehearing should be overruled, and it is so ordered.