FIELDER v. STATE.

4308                                    176 S. W. 2d 233

Opinion delivered December 20, 1943.

512

C. M. Martin, for appellant.

Guy E. Williams, Attorney General, and Earl N. Williams, Assistant Attorney General, for appellee.

SMITH, J. Appellant was found guilty of murder in the first degree, and given a death sentence upon his trial, under an indictment charging that he had murdered one Sandufer McCall. It was the theory of the State that appellant lay in wait for the deceased and assassinated him. The testimony is voluminous, and is in irreconcilable conflict, but we find it sufficient to support this contention.

A week or ten days before the killing, appellant intervened as a peacemaker to free one Ellis from an assault being made upon Ellis by deceased, and one Price. On the night of June 23, 1942, a large number of Negroes had assembled at the dance hall referred to by the witnesses as Lott's Place. Early in the evening deceased and Price assaulted appellant and manhandled him

rather roughly. During the altercation appellant's assailants took from appellant a pistol, and appellant received a knife wound. Appellant testified that as soon as he could extricate himself, he ran away and in running lost his hat; that he went home and armed himself with a shotgun, which he intended to use only in the event he was again assailed, while searching for his hat. He did not find his hat, but about two hours later he shot and killed his principal assailant.

Appellant testified he decided to call on a girl of his acquaintance, but she was not at home, and he then decided he would pay his brother-in-law a social visit. He did this, and sat on the porch of his brother-in-law, engaged in casual conversation, until midnight or later. He then started home, going the most direct route, which led him by the home of the deceased. As he approached deceased's home he saw deceased coming from the opposite direction. Deceased said, "You got away from me before, but you will not do so again," and began to advance upon appellant. Appellant testified that he backed away from the sidewalk, where he had been walking, and retreated to a point between the home of deceased and the home of a colored woman, named Jessie May Bragg. The parties are all Negroes. The two houses are about fifteen or twenty feet apart. Appellant told deceased, so he testified, to "Stand back," but deceased continued to advance, and when he saw deceased attempt to draw his pistol (which the testimony showed deceased did not have) he fired the fatal shot to protect himself from what he believed was a murderous assault about to be made upon him. Deceased had no weapon of any kind upon his person, not even a knife.

An empty shotgun shell was found near the corner of Jessie May Bragg's home. This woman testified she did not know whether she was asleep or awake when she heard the report of the gun, but she had not heard any loud or excited talk before that time. She was in a bed by an open window, and the first noise of any kind which she heard was the report of the gun, and this was between twelve and one o'clock. In view of this testimony it is not surprising that the jury found appellant guilty of

murder in the first degree, and certainly the testimony supports the verdict.

Appellant's counsel argues a number of errors assigned in his motion for a new trial, which are predicated upon *ex parte* affidavits, filed after the close of the trial, and which did not become and are not a part of the bill of exceptions. These relate to the recantation of the testimony of Clementine Barnes, contained in the affidavit of that witness, and the alleged improper argument of special counsel assisting the prosecuting attorney. These affidavits do not appear to have been presented to the trial judge until they appeared as exhibits to the motion for a new trial, and no attempt appears to have been made to have them incorporated in the bill of exceptions, approved by the trial judge, nor does it appear that a bystanders' bill of exceptions was made.

There being nothing in the bill of exceptions upon which to predicate these assignments of error, we may not, under our practice, long established, consider them. In an opinion by Chief Justice COCKRILL, in *Werner v. State,* 44 Ark. 122, it was held that it is not the province of a motion for new trial to bring upon the record irregularities that occurred at the trial, and that the facts constituting the error complained of and the exceptions to the ruling of the court, must be shown by a bill of exceptions; and the motion for a new trial can serve no other purpose than to assign the ruling or action of the court as error. This practice has since been continuously followed, and that holding has been frequently reaffirmed, one of the latest cases to that effect being the case of *Carpenter* v. *State,* 204 Ark. 752, 164 S. W. 2d 993. An even later case is that of *Chandler* v. *State,* 205 Ark. 74, 167 S. W. 2d 142.

We may, therefore, review only such assignments of error, relating to irregularities occurring at the trial, as are reflected in the bill of exceptions, and but little is left for review, except that of the sufficiency of the testimony to support the verdict, a question herein previously disposed of.

It appears that during the progress of the trial appellant's counsel left the courtroom for a short inter-

val, without having been excused by the court, and without the attention of the court being called to his absence. At this time appellant was being cross-examined by special counsel representing the State, and the record reflects that during the short interval of counsel's absence the following cross-examination of appellant occurred. "Q. This is not the first trouble you have been in is it? A. No answer. Q. Have you ever been in trouble before, of this kind? A. No answer. Q. Have you ever been convicted of murder before? The Court: Answer the question, it is a proper question. A. Well, when I was— Q. Just answer, yes or no. The Court: Answer the question, and the court will give you an opportunity to explain. Were you, or were you not? A. I was. Q. In what county? A. In Jefferson county. Q. How long were you sentenced to the penitentiary? Mr. Martin: Objections. The Court: That is not proper, he may be asked if he was convicted of a crime. Mr. Martin: I would like to know if the witness has been asked such a question. The Court: Your client's rights have been protected, even if you did not tell me you were gone. That is a proper question and the objections are overruled. Mr. Martin: Exceptions. Q. Were you again convicted of murder a second time? A. No, sir. Mr. Martin: Objections. The Court: Objections overruled. Mr. Martin: Save our exceptions. Q. Is that the only case you have ever been convicted of killing a man? A. Yes, sir. Q. You were sent to the penitentiary of Arkansas? A. Yes, sir. Q. You stated that you were sent to the penitentiary for murder—was that for killing one or two men? Mr. Martin: Objections. The Court: Objections overruled. Mr. Martin: Save our exceptions. A. I didn't kill but one, you want me to tell you the truth don't you? The way that was, his brother shot his own brother and shot me too, and I made one shot and his brother was shot down with a 32 automatic and I was shot with a 32 automatic, and he was shot with a 38 special. Q. But you were sentenced to the penitentiary for that killing. A. Yes, sir."

We think this cross-examination was not improper. Appellant had voluntarily taken the stand as a witness in

his own behalf, and was, therefore, subject to the same cross-examination that any other witness would have been, and it was not improper to ask him if he had served a term in the penitentiary and, if so, upon what charge. The competency of the testimony does not appear to be seriously questioned. The error alleged and relied upon is that having admitted this testimony, the court should have instructed the jury that it could be considered only so far as it bore upon the credibility of the witness. It was, of course, competent for no other purpose, and the court would no doubt, have so restricted its consideration by the jury, had that request been made, but it was not. It is argued that this request was not made for the reason that the presiding judge assured counsel that the rights of his client had been protected. It will be remembered that the court had just sustained an objection to the question as to the length of appellant's sentence in the penitentiary, and this, no doubt, was the circumstance the court had in mind. But, in any event, ample opportunity was afforded counsel to make this request, and the opportunity was not availed.

The practice in this respect is also well settled by numerous opinions of this court, one of the latest of these being that of *Burton* v. *State,* 204 Ark. 548, 163 S. W. 2d 160. It was there held, as it had many times previously been held, that one may not complain of the inaction of the court, where no request for action was made.

The court gave elaborate instructions to the jury, and while exceptions were saved to them separately and severally, no error is pointed out in any of them. Indeed, they appear to be what may be called the "usual instructions" in homicide cases. In addition, the court gave nine instructions at the request of appellant, and it does not appear that any instruction requested by appellant was refused, and we think it may not be doubted that the court would have charged the jury as to the restricted use to be made of the testimony showing appellant had been convicted of a felony, had the request been made, but as the request was not made, appellant may not now be heard to complain of the omission.

Appellant cites the case of *Younger* v. *State,* 100 Ark. 321, 140 S. W. 139, to sustain his contention that the instruction should have been given, even though not requested. It is true that Justice WOOD, in that opinion, uses the language quoted in the brief to the following effect: ''The State also, for the purpose of impeaching appellant as a witness, had the right to show that his general reputation for truth or morality was bad. But the court should have specifically directed the jury that the evidence of the bad character of appellant could only be considered by them as affecting the question of his credibility as a witness.''

But this language must be read in connection with the remainder of the opinion, in which it appears that the appellant in that case had asked an instruction, which the court refused to give, reading as follows: ''The bad reputation of the defendant shall not be considered by you for any purpose except as to his credibility as a witness; you cannot convict him of assault with intent to rape on proof that he is or has been guilty of some other offense.''

The difference between that case and the instant case is that there a request was made for a charge upon the use of the testimony, which was refused, and here no such request was made.

It is finally insisted that error was committed in permitting special counsel to appear and assist in the prosecution, who had not complied with a rule of this court, regulating the practice of law, which reads, in part, as follows:

''Every lawyer now licensed to practice and engaged in the practice shall be a member of the bar of this State, subject to these rules or those hereafter made.

''Failure to pay the annual license fee herein provided for to the clerk of this court within the time provided for, shall automatically suspend such delinquent lawyer from the practice. . . .''

This assignment of error may be disposed of by saying that the point was not raised until after the completion of the trial. Had this objection to the participa-

tion of special counsel been made before the trial, and found to have been well taken, the court should, and no doubt would, have forbidden the participation of the delinquent attorney in the trial; but the objection comes too late, when not made until after the completion of the trial.

Although we are neither required nor permitted to consider the *ex parte* affidavits, which are not a part of the bill of exceptions, we may say that we have nevertheless examined them, and find nothing in any of them requiring a reversal of the judgment. Chief Justice COCKRILL said of such testimony, if such it may be called, in the Werner case, *supra*, "They were doubtless intended only as persuasive to the circuit court to set aside the verdict." As they do not authorize us to do so, the judgment must be affirmed, and it is so ordered.

ROBINS, J. (dissenting). I think that the principles of law announced by this court in the case of *Williams* v. *State*, 183 Ark. 870, 39 S. W. 2d 295, are controlling here. In my opinion, the ends of justice will be properly served in this case by a reduction in the sentence imposed from death to life imprisonment.

I am authorized to state that Mr. Justice HOLT concurs in this view.