**Donald O. THOMAS, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. 384.

Supreme Court of Alaska.

April 6, 1964.

5. Trusty v. Jones, 369 P.2d 420, 422 (Alaska 1962); Rogge v. Weaver, 368 P.2d 810, 813 (Alaska 1962).

Theodore M. Pease, Jr., Anchorage, for appellant.

Robert C. Ewrin, Dist. Atty., and James N. Wanamaker, Asst. Dist. Atty., Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

The defendant, Donald O. Thomas, also known as L. C. Thomas, appeals from a judgment of conviction for the crime of robbery. The indictment charged him with feloniously taking from the person and presence of Nadine Bisig $342.51 by putting the victim in fear with a butcher knife. In his brief Thomas advances five reasons why the judgment against him should be reversed and the cause remanded with directions to dismiss the indictment or grant a new trial.

The defendant's first contention is that the trial court should either have granted a new trial or have stricken and excluded the testimony of a certain witness, Carol Burford, because her name did not appear on the indictment, although it was established at the trial that she had earlier testified before the grand jury in the same case. One of the requirements of Rule 7(c) of the Rules of Criminal Procedure is that "[w]hen an indictment is found the names of all witnesses examined before the grand jury must be inserted at the foot

of the indictment, or endorsed thereon, before it is presented to the court." It is clear from the record that Carol did testify before the grand jury and that her name does not appear on the indictment.

It does not appear that defendant's counsel made any objection or timely motion below on this point other than to inform the court that he learned for the first time at the trial that Carol had testified before the grand jury. The following remarks then passed between counsel and the court:

"Mr. Pease [attorney for the defendant]: I wondered if we could do this. Go ahead with the case and reserve to me the right to move for a mistrial for a verdict of acquittal on this basis [that is, on the basis that Carol Burford's name did not appear on the indictment].

"Court: Satisfactory."

From the foregoing it is evident that the court was reserving to the defendant the right to bring up again on a motion for judgment of acquittal the question concerning the admissibility of Carol's testimony. Some time after the jury had returned its verdict and been discharged, the defendant did act upon the reservation granted and filed a written motion for judgment of acquittal notwithstanding the verdict and in the alternative for a new trial. One of the grounds on which the motion was based was the failure of the indictment to show the name of Carol Burford as a witness before the grand jury.

The record does not disclose that the subject motion was ever noticed for hearing. In fact the case was allowed to go to judgment without any request being made of the court for a decision on the motion. In such a situation we follow the rule that alleged error occurring upon the trial of a case must be raised and urged in the trial court and passed upon by that court before this court will consider it on appeal [1] unless the error specified raised a jurisdictional question [2] or deprived the defendant of a substantial right.[3] This is in keeping with Crim.R. 47 that only plain errors or defects affecting substantial rights may be noticed even though they were not brought to the attention of the court.[4]

The purpose of the requirement of endorsement upon the indictment of the names of the witnesses before the grand jury is to advise the accused of those persons who will give testimony against him so that he can intelligently prepare his defense and avoid surprise.[5] While this requirement has been held to be a substantial right of the accused,[6] it is nevertheless a personal right which he may waive [7] as, we conclude, the defendant did in this case.

When the fact of Carol's appearance before the grand jury was discovered and counsel for defendant informed the court that this disclosure came as a surprise to

1. United States v. Kaiser, 138 F.2d 219 (7th Cir. 1943), cert. denied 320 U.S. 801, 64 S.Ct. 431, 88 L.Ed. 483 (1944); Fielder v. State, 206 Ark. 511, 176 S.W. 2d 233, 235 (1943); People v. Staver, 115 Cal.App.2d 711, 252 P.2d 700, 708 (1953); Morris v. State, 200 Ga. 471, 37 S.E.2d 345, 350 (1946); White v. State, 81 Okl.Cr. 399, 165 P.2d 151 (1946). Cf. Pollastrine v. Severance, 375 P.2d 528 (Alaska 1962).

2. White v. State, supra note 1 at 153 of 165 P.2d.

3. Wright v. United States, 301 F.2d 412 (10th Cir. 1962); State v. Kloss, 222 Or. 237, 352 P.2d 732 (1960).

4. Crim.R. 47 reads as follows: "(a) Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded. (b) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

5. State v. McDonald, 231 Or. 24, 361 P.2d 1001, 1004 (1961).

6. Ibid.

7. Ex parte Jenkins, 197 Okl. 283, 170 P. 2d 235 (1946); Commonwealth ex rel. Ricks v. Maroney, 197 Pa.Super. 64, 176 A.2d 461 (1961); cf. People v. Bartlett, 312 Mich. 648, 20 N.W.2d 758, 761 (1945); State v. Lindsey, 80 S.W.2d 123, 126 (Mo.1935); State v. Hogan, 164 Wash. 403, 2 P.2d 702, 705 (1931).

him, the court made the following suggestions to counsel:

"If you're surprised and think that you can do some good with the surprise, I could excuse the jury to give you time to get evidence to the contrary. I suspect though from the major [*sic*] of the thing that since you already knew that she had testified in the preliminary hearing a certain way, since you knew that she had testified here a different way, since you knew that she had given a set of second statements to the police a different way, I suspect that there is not much that you could do in the way of a surprise here. Now, I think that you have preserved your matter probably the way to get at the matter would be to move for a mistrial, on the grounds that the grand jury indictment does not disclose all of the witness [*sic*] who appeared before the grand jury. I think, in view of the fact since we have gone as far as we have that we should not declare a mistrial at this time. I think, we probably ought to send it to the jury to see what happens. I think, that you then in case of an advert [*sic*] verdict might raise this point and brief the matter and see what the effect is. * * *"

The defendant did not press the claim of surprise or accept either of the court's suggestions, but instead made his own proposal to the court as set forth in the third paragraph of this opinion. The court accepted the proposition, but the defendant failed to follow through by insisting that the trial court rule upon his later motion for judgment of acquittal or in the alternative for a new trial.

■ As for the claim of surprise itself, the defendant has never established that he was actually surprised by the appearance of Carol Burford as a witness at the trial other than to say in his brief that her testimony at the preliminary hearing in this case was different from the story she told at the trial as to her identification of the defendant. The record reveals that the de-

fendant knew that Carol had testified at the preliminary hearing, that she had there stated that she could not identify the defendant and that after the preliminary hearing she told the police that she could identify the defendant. This does not add up to surprise resulting from the absence of Carol's name on the indictment. We find no plain error or defect affecting any substantial right of the defendant in the fact that Carol Burford was permitted to testify in the trial of this case.

Secondly the defendant claims that it was prejudicial error for the trial court to deny his motion to withdraw a certain exhibit No. 2 which had been admitted into evidence for the state. The exhibit in question was not sent up with the record, however, we gather from the transcript of the testimony and the briefs of the parties that it was a diagram prepared by Carol Burford just prior to the trial, with the aid of some police personnel, from an original diagram made by Carol alone. She admitted that the diagram—exhibit No. 2—was not drawn to scale but she adopted it as depicting her knowledge and recollection of the area around her home at the time of the alleged robbery. The original diagram was made available for defendant's inspection at the trial but he asked no questions and made no comments about it.

In cross-examining Carol, defendant's counsel got her to admit that a diagram of the subject area, which he proceeded to sketch on the courtroom blackboard, in some respects more nearly approximated the location and size of objects and the distances between them than was made to appear on exhibit No. 2. At this juncture of the trial the defendant moved to have the exhibit withdrawn "on the grounds that it is misleading and that it doesn't show the situation as it really is." The trial judge overruled the motion and stated to defendant's counsel that exhibit No. 2 was Carol's conception of the area under consideration and that he saw no substantial difference between her diagram and the sketch drawn on the blackboard by defense counsel. Then

**22**

addressing himself to the jury, the judge continued:

"[Y]ou have seen the exhibit drawn on the board and the exhibit this witness previously drew and which we have called exhibit two, if there is any difference you know what the difference is. It isn't my problem to pass on that. * * *"

■ The verdict of the jury would seem to indicate that they, like the trial judge, saw no substantial difference in the two sketches. That being the case and, since neither the exhibit nor the blackboard sketch were sent up for our scrutiny and for comparison with each other and with the oral testimony of Carol Burford, we are in no position to say that the trial court committed error, let alone prejudicial error, in denying the defendant's motion to have exhibit No. 2 withdrawn.[8]

■ The third issue raised by the defendant is that his motion for judgment of acquittal should have been granted because as a matter of law the testimony of an alleged accomplice, Harold Harvey, was not corroborated as required by AS 12.45.020. This statute declares that a conviction shall not be had on the testimony of an accomplice unless it is corroborated by other evidence which tends to connect the defendant with the commission of the crime.

Harvey testified at the trial that he met with the defendant, whom he referred to as L. C. Thomas, about noon on July 17, 1962, and discussed the robbery. At ten or eleven o'clock, p. m., of the same day, Thomas and another man, Hal Burford, came to Harvey's room and from there the three men left in a Buick convertible car, driven by Burford, and proceeded to the Green Bottle Liquor Store, where Thomas handed Harvey a butcher knife. Armed with the knife, Harvey entered the liquor store alone and forced the woman clerk in

charge to hand over to him the money and checks contained in the cash register. The loot was put into a paper sack and Harvey took it out to the car. He and his two companions then drove away, dividing the contents of the sack between them as they rode along. Harvey received about $120 as his share

Harvey further testified that the three men drove to a place where there was a small house with an alley behind it. Here they left the Buick in the alley and walked across a vacant lot to a hardtop sedan parked behind another house.[9] At this point Harvey's attention was directed to Carol Burford's diagram of the environs of the Burford residence (exhibit No. 2 mentioned earlier in this opinion) and he acknowledged it as resembling the area he had been describing. About half way across the vacant lot Harvey dropped and lost a roll of coins. All three men stopped for about a minute and searched for the coins. Failing to find the coins, the three went on over to the hardtop sedan, got into it and drove off; however, Hal Burford first went briefly into the house beside which the sedan was parked.

We are of the opinion that the following factual circumstances appearing in the testimony of Carol Burford are corroborative of the testimony of the accomplice Harvey and tend to connect the defendant Thomas with the commission of the crime: On July 17, 1962, Carol was living with her husband, Hal Burford, in a duplex house which, with its surroundings, as identified by Carol in exhibit No. 2, matched generally Harvey's description of the area where he and his two companions changed cars on the night of the robbery. Hal left the house at about seven o'clock in the evening in his Buick convertible. He returned about five hours later and laid a sack on the bed in the couple's bedroom.

8. See Higbee v. LaSalle, 145 Cal.App.2d 737, 303 P.2d 65, 67 (1956); Beneficial Life Ins. Co. v. Wakamatsu, 75 Idaho 232, 270 P.2d 830, 833 (1954); Lang v. Hill, 226 Or. 371, 360 P.2d 316, 320 (1961).

9. The vacant lot was evidently situated between the two houses described by the witness Harvey in his testimony.

The sack contained currency, change in wrappers and three checks, totalling about $120. After telling his wife that he had "to take L. C. [the defendant] and the old man [evidently, the accomplice Harvey, who was twice as old as Hal Burford] and leave them off somewhere," he left the house again.

When her husband had gone, Carol walked to the exterior door at the rear of the house and, looking out through the window in the door, observed her husband and the defendant, whom she knew quite well, get out of a 1954 two-door Mercury parked in line with the back door. This car belonged to the Burfords' landlord who lived in the other portion of the duplex and loaned the Mercury occasionally to the Burfords. Carol saw the two men run over into some grass and weeds (evidently the vacant lot described by Harvey in his testimony) where they bent over as if they were hiding or looking for something. A third man, whom Carol could not identify, came from around the back of the Mercury. To the foregoing it should be added that the clerk at the liquor store fixed the time of the robbery at about 11:25 p. m., and the amount of money taken at about $342.51 consisting of currency, wrapped and loose coins and some checks. She also told how Harvey, whom she was able to later identify, threatened her with a butcher knife and also that he carried the money out of the store in a sack, which she furnished him, and departed in a car.

While there are some discrepancies between the testimony of the accomplice Harvey and that of Carol Burford and the clerk at the liquor store, as related above, the overall effect of the evidence elicited from the two women witnesses was sufficient in this case to satisfy the statutory requirement of corroboration.[10]

In Oxenberg v. State [11] we held that it is the court's function to determine whether the evidence is sufficient to meet the statutory requirement of corroboration; and it is then the jury's function to decide whether the evidence is effective in making the accomplice's testimony worthy of belief. In this connection we added:

"The trial judge must be allowed considerable latitude in exercising the discretion required of him. He has the opportunity to observe the manner in which the accomplice details the circumstances of the transaction; and the opportunity to form a considered judgment as to whether the accomplice was collected, whether he possessed observation, whether his recollection was fresh, and whether he seemed to be relating actual events or fictitious and invented ones. The trial judge has the opportunity of comparing the details of the transaction as related by the accomplice with other circumstances in the case. He then has the duty of deciding from this whether such other circumstances fit into or correspond with what the accomplice has said in a sufficient number of particulars to justify the reasonable belief that the accomplice was speaking the truth. If the trial judge is satisfied in this, then he must submit the matter to the jury so that it may decide whether to believe or disbelieve what the accomplice has said." [12]

In the light of what we had to say in Oxenberg and the corroborative evidence produced by the state in this case, we hold that the trial court did not abuse its discretion in denying the motion for judgment of acquittal and in allowing the jury to weigh all of the evidence, including Harvey's

---

10. The statutory requirement of corroboration is set forth in AS 12.45.020, formerly section 66-13-59 ACLA 1949, as follows: "A conviction shall not be had on the testimony of an accomplice unless it is corroborated by other evidence which tends to connect the defendant with the commission of the crime; and the cor-

roboration is not sufficient if it merely shows the commission of the crime or the circumstances of the commission."

11. 362 P.2d 893 (Alaska), appeal dismissed, 368 U.S. 56, 82 S.Ct. 189, 7 L.Ed.2d 128 (1961).

12. 362 P.2d at 897.

testimony, and determine whether what he said was true.

Next the defendant contends that the indictment against him should be set aside for the reason that it contained no allegation that he stole the property of another, and therefore failed to charge larceny, one of the essential elements of robbery, and corollarially failed to charge the crime of robbery.

The Alaska robbery statute under which the defendant was indicted states "[t]hat whoever, by force or violence, or by putting in fear, *steals and takes* from the person of another anything of value, is guilty of robbery * * *." [13] [Emphasis supplied.] The indictment omitted the word "steal" and simply charged that the defendant "did wilfully, unlawfully and feloniously, by putting Nadine Jean Bisig in fear with a butcher knife, take from the person and from the presence of the said Nadine Jean Bisig property of value, to-wit * * *."

It is the opinion of this court that the words "did feloniously take" as used in the indictment sufficiently alleged the element of a stealing with the intent of permanently depriving Nadine Jean Bisig, the person in possession, of her property in the money in the cash register.[14] It is our further opinion that the indictment satisfies the requirements of Crim.R. 7(c) that the indictment shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. It satisfactorily enables the defendant to understand the nature of the charge and prepare his defense and it makes the verdict and judgment available as a bar to a subsequent prosecution for the same offense.[15] Indictments similar to the one here under consideration have been approved in other jurisdictions.[16] Lastly, the defendant has made no showing that any of his substantial rights were prejudiced by the wording of the indictment in this case. We conclude that the defendant is not entitled to have the indictment set aside.

The final reason given by the defendant for a reversal in this case is that it was fundamental error for the trial court to fail to instruct the jury on the elements of larceny and, specifically, to fail to instruct that for them to find the defendant guilty of the crime of larceny they must find that he aided and abetted in taking the property of another with intent to permanently deprive the owner thereof.

In its instruction No. 10 to the jury on the elements of the crime of robbery, the court stated:

"The crime of robbery is defined in the law of the State of Alaska as follows:

" 'That whoever, by force or violence, or by putting in fear, steals and takes from the person of another anything of value is guilty of robbery * * *.'

"It is also provided in Alaska law as follows:

" ' * * * all persons concerned in the commission of a crime, whether they directly commit the act constituting the crime or, though not present, aid and abet in its commission, shall be prosecuted [and] tried * * * as principals.'

"If you find from the evidence and beyond a reasonable doubt that on or about the 17th day of July, 1962, at or near Anchorage, the defendant Don-

---

13. Section 65–4–24 ACLA 1949 [AS 11.-15.240].

14. See Keeton v. State, 70 Ark. 163, 66 S. W. 645 (1902) ; State v. Smith, 40 Wash. 615, 82 P. 918 (1905). Cf. also Wilson v. State, 28 Okl.Cr. 102, 228 P. 1108, 1109 (1924) ; State v. Sawyer, 224 N.C. 61, 29 S.E.2d 34, 37 (1944) ; Barfield v. State, 137 Tex.Cr. 256, 129 S.W.2d 310, 313, 123 A.L.R. 1093 (1939).

15. Cf. Adkins v. State, Opinion No. 191, 389 P.2d 915 (Alaska 1964).

16. People v. Baker, 183 Cal.App.2d 615, 7 Cal.Rptr. 22, 26 (1960) ; People v. Dozier, 35 Cal.App.2d 49, 94 P.2d 598, 601 (1939) ; State v. Broom, 135 Or. 641, 297 P. 340 (1931).

ald Thomas, also known as L. C. Thomas, did wilfully, unlawfully and feloniously aid and abet Harold Harvey to take and steal from the person or from the immediate presence of Nadine Jean Bisig any United States money, by putting her in fear, then you should find the defendant guilty. If you do not so find or you have a reasonable doubt thereof you should acquit the defendant.

" 'Aid and abet' means to help, assist, or facilitate the commission of a crime, promote the accomplishment thereof, help in advancing or bringing it about, or encourage, counsel, or incite as to its commission."

The defendant did not submit any written requests for instructions. His only objection to the instruction quoted above was that it contained no definition of "steal," which he felt should be included in the definition of the crime. To this the court replied:

"Had you requested an instruction on 'steal', I certainly would have given in; since you did not request it, it seems to me that the matter of 'steal' is a common knowledge, and in light of the evidence in this case, there can't be any question that the man stole— the man who did the stealing—stole. The only question that we have here is whether or not Mr. Thomas helped him do it."

Under the circumstances of this case we think that the trial court was correct in his ruling and that instruction No. 10 fulfilled the requirements of Crim.R. 30(b) that "[t]he court shall instruct the jury on all matters of law which it considers necessary for the jury's information in giving their verdict * * *."

The evidence adduced by the state showed that the defendant and Harvey planned the robbery earlier in the day on which it was committed, that the defendant supplied Harvey with a knife to use in the robbery, that Harvey took the paper sack containing the money out of the liquor store, that the money was split between the three participants in the crime, and that one of the participants, Hal Burford, gave his share of the money to his wife who used it to pay the family house rent.

 This evidence clearly established the larceny elements of the case and nothing was developed in the case to negate those elements, namely, the taking of money with the intent to permanently deprive the owner thereof. Since the evidence was conclusive that the money was stolen, we find no such prejudicial error in instruction No. 10 as would require a reversal in this case.[17]

Judgment affirmed.

17. See Thomas v. State, 54 Ga.App. 747, 189 S.E. 68, 69 (1936); Traxler v. State, 96 Okl. Cr. 231, 251 P.2d 815, 837 (1952).