NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

BOOTH SERVICES, INC, Respondent.

No. 74–1191.

United States Court of Appeals, Fifth Circuit.

July 31, 1975.

**950**

Elliott Moore, Deputy Assoc. Gen. Counsel, John G. Elligers, Atty., N.L.R.B., Washington, D. C., W. Edwin Youngblood, Director, Reg. 16, N.L.R.B., Ft. Worth, Tex., for petitioner.

Michael Crawford, Sam S. Minter, Houston, Tex., for respondent.

Before RIVES, GEWIN and GOLD-BERG, Circuit Judges.

RIVES, Circuit Judge:

The National Labor Relations Board found that respondent Booth Services, Inc. ("the Company") violated sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act [29 U.S.C. §§ 158(a)(1), 158(a)(3)]. Among the violations was a requirement by the Company that its employees join the Oil, Chemical and Atomic Workers International Union, AFL–CIO, Local 4–449 ("OCAW"). The Board seeks enforcement of its order to the Company to reimburse the OCAW initiation fees and dues to all employees whom it forced to join that union. The Company disputes the Board's finding that employees were forced to join OCAW and objects to the Board's remedy. With minor modifications in the "Notice to Employees," we grant enforcement.

This controversy arises out of a dispute between the Company and three unions—called the Laborers, the Operating Engineers, and the Plumbers and Pipefitters Unions—over the introduction of automated welding to the oil pipeline construction industry.[1] Those three were the dominant unions in the pipeline construction industry. They and the Pipeline Contractors Association had national agreements to which the Company was not a party. In August, 1972, the Company contracted with the Lone Star Gas Company to build a section of pipeline in west Texas. The Company could not reach agreement with the three unions on the use of the automated welding machines required by the Company's contract with Lone Star. The Company then entered into an agreement on the Lone Star job with OCAW, which did not oppose the use of the automated welding machines. The agreement provided that OCAW would be the exclusive representative of all employees, excluding guards, watchmen and supervisors.[2] The work, which was completed within five months, began in August, 1973. The three unions which opposed the use of the automated welding machines organized and picketed against OCAW and the Company.

The Company maintained a field office at Midland, Texas, and at Colorado City, Texas. Each office employed about 400

---

1. The traditional technique of "stick welding" required highly skilled craftsmen. Automated welding was a new, untried technique requiring less skilled craftsmen. Welders in the Pipefitters Union refused to operate the auto-mated welding machines and opposed their use by the Company.

2. Texas is a right-to-work state in which compulsory union membership is unlawful; hence, a closed shop would be impermissible.

persons at one time or another during the five-month period in question. The foreman at each office selected men for his crew from the job applicants gathered outside the field office. He then took those selected into the office to complete the necessary paper work.

■ The Board's finding that the Company forced its employees to join OCAW is supported by substantial evidence in the record, as summarized below. First, the Company's dispute with the other unions over the automated welding machine provided a motive for requiring that its employees joining a union should join OCAW. Second, the Company posted a sign outside each field office stating that the wages and working conditions were governed by a contract between the Company and OCAW. Third, the clerks who signed up new employees handed each man an OCAW authorization form along with federal tax forms. Since the prospective employee knew that he had to complete the tax forms in order to begin work, he would likely have thought that completion of the OCAW form was also a prerequisite to beginning work. Fourth, about 97% of the workers joined the OCAW, though many of them already belonged to one of the unions that opposed the use of automated welding machines. Fifth, six men testified that either a clerk in the Company office or their foreman told them that they had to join OCAW in order to begin work.

The Company presented the testimony of a man who only occasionally signed up new workers and who had no knowledge of the practices of other persons who hired new employees. The man's denial that any workers were forced to join OCAW, thus, had limited relevance. The hearing revealed that the Company's president instructed the hiring clerks that, although they could not use coercion, it would be desirable for all new employees to join OCAW. Since the front office did not closely oversee the clerks, they may have required new employees to join OCAW or told them of the desirability of joining OCAW.

The six men who testified that they were told to join the union were hired at one field office. The Company contends that there is no evidence to support the Board's finding as to the hiring practices at the other field office. We do not agree. Part of the evidence heretofore mentioned in conjunction with the testimony of the six men applies to both field offices. The Company has offered no evidence to show that the respective practices differed at the two field offices. The record adequately supports the Board's finding that the Company required its employees to join OCAW regardless of the field office through which their work began.

■ The Company also challenges the propriety of the remedy fashioned by the Board, asserting that it is penal in nature. The remedy requires the Company to reimburse its former employees for all sums deducted for OCAW initiation fees or dues. The Company can avoid its liability to any individual employee by showing that the employee already belonged to OCAW before he came to work for the Company, or that the employee joined OCAW of his own free will. Thus, there is a rebuttable presumption that the Company required each of its employees to join OCAW. The Company asserts that putting the burden on it to rebut the presumption is penal, and that, except as to the six men who testified otherwise, the burden should be on each employee to show that he was forced to join OCAW.

Placing the burden on the Company is consistent with the findings of fact. Speaking to the same issue in another context, the Sixth Circuit said:

"The burden should not be on the General Counsel, in such a case, to show that each employee was coerced; rather, once an initial showing of substantial and widespread coercion is made, it is incumbent on the union or employer, as the case may be, to come forward with evidence that specific employees were not coerced."

*National Cash Register Company v. N.L. R.B.*, 6 Cir. 1972, 466 F.2d 945, 969. Indeed, where the employer's fault was great, the Fifth Circuit has required reimbursement without allowing the company to show that individual employees did not deserve it. See *National Labor Relations Board v. Parker Bros. & Co.*, 5 Cir. 1954, 209 F.2d 278; *Dixie Bedding Manufacturing Co. v. N.L.R.B.,* 5 Cir. 1959, 268 F.2d 901. In the context of a company reimbursement of dues and initiation fees exacted for a company-dominated union, the Supreme Court said,

"Here the Board, in the exercise of its informed discretion, has expressly determined that reimbursement in full of the check-off dues is necessary to effectuate the policies of the Act. We give considerable weight to that administrative determination. It should stand unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act. There is no such showing here."

*Virginia Electric Co. v. Board*, 1943, 319 U.S. 533, 540, 63 S.Ct. 1214, 87 L.Ed. 1568. We conclude that this remedy effectuates the policies of the Act, balances the equities of the instant situation, and remedies the wrong revealed by the Board's findings of fact. Accordingly, we grant enforcement of the Board's order, as modified.

■ Upon oral argument, it was conceded by counsel for the Board that the notice to employees provided for in the order should be modified to accord with a conclusion of the Administrative Judge [3] affirmed by the Board (App. 60). That modification is made immediately following a paragraph of said notice which reads:

"WE WILL reimburse all our employees who were required to join OIL, CHEMICAL AND ATOMIC WORKERS UNION AFL–CIO, or its LOCAL

3. "However, as the order is remedial and not punitive, such reimbursement is not appropriate as to those who were members of OCAW

4–449 for moneys deducted from their pay as initiation fees and dues."

To said paragraph there is added the following:

Such reimbursement shall not be required as to those who were members of OCAW at the time of hire or as to those who joined voluntarily upon or after hire.

As so modified, the order of the Board is enforced.

Modified and enforced.

at the time of hire or those who joined voluntarily upon or after hire." (App. 51)