Vernon I. MARDEN, Plaintiff-Appellant,

v.

The INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, an unincorporated association, et al., Defendants-Appellees.

No. 76–2797.

United States Court of Appeals, Fifth Circuit.

July 12, 1978.

**578**

Michael E. Merrill, San Diego, Cal., Stephen J. Schultz, William R. Radford, Miami, Fla., for plaintiff-appellant.

Wm. B. Killian, John M. Barkett, Miami, Fla., Plato E. Papps, Gen. Counsel, IA-MAW, Washington, D. C., Joseph P. Manners, George Tucker, Miami, Fla., for defendants-appellees.

Before GEWIN, GODBOLD and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Vernon Marden appeals the final judgment dismissing with prejudice his suit against defendants National Airlines and the International Association of Machinists, District Lodge 145, Local Lodge 368 (hereinafter "the Machinists" or "the Union"). In a suit brought under the Railway Labor Act, 45 U.S.C. § 151 *et seq.,* Marden asserted that because his employment was unlawfully conditioned upon Union membership, he is entitled to reimbursement for all fees paid the Union as well as declaratory and injunctive relief. Before this court, appellant Marden seeks reversal of the district court conclusion that the collective bargaining agreement between the Machinists and National Airlines created an agency payor status rather than compulsory union membership. Additionally, appellant itemizes several alleged shortcomings in the order of judgment and remedy. We affirm the lower court's rejection of appellant's monetary suit and find that Marden's claims for declaratory and injunctive relief must be dismissed as moot.

Appellant's path to the present litigation began with his application to National Airlines for employment as an avionics technician in January, 1969. Like all prospective employees, Marden was furnished by National with a Notice of Union Membership Requirement. This form stated that he was required to join the Union within sixty calendar days of his date of hire and it prescribed the payment of various fees, dues and assessments as conditions of employment. Without protest, appellant tendered his initiation fee although he did not become a member nor did he commence paying dues until November, 1971.

Marden evidenced no complaint about the apparent union membership requirement until he filed this suit in March, 1975. During the course of the ensuing litigation, the Union offered him an agency fee payor status. This status, by which Marden is carried on the rolls as a nonmember but as one continuing to tender dues and assessments, was assumed after the issuance of final judgment by the court below.

The district court upheld the collective bargaining agreement finding that it required only the payment of Union fees rather than Union membership. However, the court held unlawful the Notice of Union Membership Requirement which was found to mislead employees by seeming to mandate membership. Accordingly, the court ordered National to amend this notice form to comply with the law. Upon ordering each party to bear its own costs, the court dismissed Marden's suit with prejudice.

The principal question of the appeal is whether Vernon Marden is entitled to reimbursement for the dues, fees and assessments he paid to the Union. Appellant contends that, via the Notice of Union Membership Requirement, he was essentially hoodwinked into joining the Machinists even though the most that could be lawfully required was the payment of fees incidental to membership. Moreover, accord-

ing to Marden, even this monetary requirement was inoperative in the present case. Since the collective bargaining agreement between the IAM and NAL went too far by requiring membership rather than just money, it was illegal, hence, ineffective to impose union obligations of any sort. Therefore, Marden owed neither his dollars nor his name to the Union and gave them only because he was misinformed about his obligations by the Notice of Union Membership Requirement. Now aware of his rights, Marden wants his money back.[1]

The district court denied monetary relief finding that the agreement between IAM and National Airlines validly required the employees to tender the fees incidental to membership without mandating membership itself. Since Marden was already obliged to contribute as an agency fee payor, the fact that he might have been misled by the Notice form into formally joining the Machinists could inflict no cognizable financial harm. We affirm the district court's conclusion and further observe that even if the agreement requires actual membership, Marden could not escape his duty to contribute financially to union activities.

■ The distinction between compulsory union membership and compulsory payment of all fees incidental to membership is crucial to Marden's claim. It is also fundamental to the accommodation of the two legislative policies at odds in this case. On the one hand, the Railway Labor Act has long reflected an aversion to the infringement of associational prerogatives that accompanies mandatory union membership. However, in the 1951 Amendment to the Act, a competing congressional purpose sought " . . . the elimination of the 'free riders'—those employees who obtained the benefits of the unions' participation in the machinery of the Act without financially supporting the unions." *International Association of Machinists v. Street*, 367 U.S. 740, 761, 81 S.Ct. 1784, 1796, 6 L.Ed.2d 1141, 1157 (1961). To safeguard private freedom of choice while eliminating free riding at the expense of dues paying union members, the provision of the Act authorizing union security agreements was carefully confined in *Railway Employees Dept., AFL–CIO v. Hanson*, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed.2d 1112 (1956). In *Hanson*, the court held that while union "membership" could be required of employees, for purposes of 45 U.S.C. § 152, sub. 11, such membership encompasses only the financial obligations of union participation and does not include formal union membership. Accordingly, a collective bargaining agreement can require an employee to share in the expenses of union activity; it may not mandate that he actually join the union as a condition of employment.

In the present case, the appellant argues that the Union security provision exceeds the boundaries drawn in *Hanson* and *Street* and is therefore wholly inoperative. He stresses that both IAM and National stipulated that membership was required of employees. Further, the appellant points to language in the bargaining agreement that expressly characterizes union membership as a condition of employment. While we

1. While conceding that the Railway Labor Act has no express provision for a dues reimbursement remedy, the appellant relies on seemingly analogous decisions construing the National Labor Relations Act. Such cases as *NLRB v. Booth Services, Inc.,* 516 F.2d 949 (5th Cir. 1975) have required an employer to reimburse workers for fees paid under a union membership requirement illegally imposed by the employer.

Initially, we observe that while cases under the NLRA offer cogent analogy, they need not be imported wholesale into the Railway Labor arena. *E. g., International Ass'n of Machinists v. Northeast Airlines,* 536 F.2d 975, 977 (1st Cir. 1976). Moreover, the NLRA cases cited by appellant are fundamentally different from the situation we presently consider. In *Booth,* there is no showing that the coerced employees would have paid union dues but for the action by the employer. In the case before us, Marden was obligated as an agency fee payor irrespective of the alleged compulsion to formally join the Union.

The Union payments made by Marden exceeded $450. We note that during the period these payments were made, Marden received a retroactive pay increase in a lump sum of roughly $1,200. Also, during the time of Marden's employment with National, Union negotiated pay increases have enhanced his salary by some 50%.

find this to be a close question, we are inclined to the view of the district court.

■ The district court did not discuss the effect of the stipulations on the issue of whether union membership was compelled. Instead, the court proceeded to make its own determination independently of positions taken by parties to the case. In supporting such a disregard of their stipulations, the appellees offered several arguments that we cannot accept. We reject any assertion that a stipulation for purposes of trial has no vitality in summary judgment proceedings. *Stubblefield v. Johnson-Fagg, Inc.,* 379 F.2d 270, 272 (10th Cir. 1967). Equally astonishing is the contention that a stipulation made by previous counsel evaporates upon the retention of new attorneys. *Cf. Laird v. Air Carrier Engine Service, Inc.,* 263 F.2d 948, 953–954 (5th Cir. 1959). While in some circumstances, a stipulation may be set aside upon appropriate motion to the court, no such motion was timely filed below. *See Osborne v. United States,* 351 F.2d 111, 120 (8th Cir. 1965).

■ However, a court is free to disregard stipulations if parties have spoken to "the legal effect of admitted facts    .    .    . since the court cannot be controlled by agreement of counsel on a subsidiary question of law." *Swift & Co. v. Hocking Valley R. Co.,* 243 U.S. 281, 288–289, 37 S.Ct. 287, 290, 61 L.Ed. 722, 725 (1917). Here, we consider a provision stipulated to require union membership. This is a statement of the effect of a contract, a legal conclusion that is not binding upon a court. *See Mead's Bakery, Inc. v. C. I. R.,* 364 F.2d 101, 106 (5th Cir. 1966); *Hegeman-Harris & Co. v. United States,* 440 F.2d 1009, 1012, 194 Ct.Cl. 574 (1971). Thus the district judge was free to pursue his own examination of the contents of the agreement unencumbered by stipulations of counsel.

■ In examining the agreement, the court correctly found that payment of fees rather than membership, was required of National employees. While language in the agreement expressly required membership,

this language tracked the applicable statute which has been judicially construed to authorize "membership" only in terms of fees incidental to membership. The judicial whittling of "membership" to its "financial core," was accomplished over a decade ago and was presumably known to those who drafted the agreement. Furthermore, another section of the agreement forbids the dismissal of any employee who maintains the financial obligations of membership. When this section is read in light of the peculiarly modified "membership" requirement, it becomes clear that money and not membership is compelled.

■ Even if the agreement had required membership, a decision of this court would nonetheless bar relief for Marden. In *Gray v. Gulf M&O R. Co.,* 429 F.2d 1064 (5th Cir. 1970), this court did not void an agreement that apparently required membership, but applied it to compel the payment of union fees. In *Gray,* a Seventh Day Adventist was discharged because he refused to contribute to the union due to sincere religious conviction. His discharge was upheld. The court found the agreement binding even though, according to Marden's argument here, it could be attacked as void due to illegality. If we accepted appellant's view of the agreement at issue here, it would correspond to the one before the court in *Gray:*

> The agreement requires all employees of the railroad in the craft or class of machinist represented by the IAM, as a condition of their continued employment, become members of the IAM within sixty (60) calendar days from the date they become employees and thereafter to maintain membership in the IAM by rendering the periodic dues, initiation fees and assessments uniformly required as a condition of acquiring or retaining membership.

302 F.Supp. 292, 293 (district court description). Although the agreement in *Gray* evidently overstepped the bounds of permissible union security, it was not voided but given effect as an agency shop agreement. "    .    .    . the union-shop agreement is not itself unlawful. (cite omitted) The appellees therefore remain obliged, as a condition

of continued employment, to make payments to their respective unions called for by the agreement." 429 F.2d at 1071. We conclude that even if the agreement in this case improperly required membership, it was still effective to the extent of compelling payments to the Union. Finding that Marden was obliged to pay Union dues as an agency fee payor, we affirm the lower court determination that he suffered no cognizable financial loss by being allegedly duped into formal membership.[2]

▮▮▮ Losing in his suit for financial restitution, the appellant also fails in his claims for declaratory and injunctive relief. Marden has already secured his individual rights and interests; accordingly, this portion of his suit is bereft of further controversy and must be dismissed as moot. A case must remain alive throughout the course of appellate review to sustain our jurisdiction. E. g., Hollon v. Mathis Ind. School Dist., 491 F.2d 92 (5th Cir. 1974). Here, Marden presently enjoys the agency fee payor status that he sought with this litigation. Indeed, he was offered this status by the Machinists after he first signaled his unhappiness with union membership by filing the present lawsuit. While courts are generally reluctant to declare mootness simply because a party abandons an illegal course of conduct, Allee v. Medrano, 416 U.S. 802, 810–811, 94 S.Ct. 2191, 2197–2198, 40 L.Ed.2d 566, 578 (1974), such is not the case here. At no time did the IAM actually refuse Marden an agency fee payor status.

Prior to this lawsuit, he never asked. Now an agency fee payor, Marden is free from actual or prospective unlawful membership compulsion. There is not the slightest indication from the IAM or National that Marden could lose his job for offering money instead of membership to the Union.[3] Instead, uncontradicted evidence declares that non-membership will not be a basis for discharging Marden. Nationwide and in Canada, between 1,400 and 1,700 other employees are making the same qualified contribution to Machinists' locals without any threat to their employment. To escape mootness, Marden must be able to show at least some likelihood that illegal conduct will resurface. SEC v. Medical Committee for Human Rights, 404 U.S. 403, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972). No such prospect exists in the present case.

▮▮▮ There may be some chance that, unless enjoined, NAL might continue to distribute the Notice of Union Membership Requirement that the lower court found misleading. While we agree that this form created a false impression of the union participation required by new workers, we are powerless to remedy the practice in this suit. This is not a class action; nor is the appellant authorized to sue as a private attorney general.[4] The notice form cannot impact in any way upon Vernon Marden whose own rights are now secured. Its distribution may prejudice future employees, but we may only adjudicate the rights of the parties before our court. DeFunis v.

---

2. During the lower court proceedings to consider the question of damages, the appellant introduced evidence that, due to his union membership, he was forbidden to work during strikes thereby suffering weeks of lost wages. We do not pass upon this matter since no claim for such a loss has been raised in this appeal.

3. We note that Marden worked more than two and a half years for National Airlines before being accepted into the Union. No suggestion appears that this non-membership jeopardized his job standing or security.

4. Appellant's argument that the district court should have ordered the employer to notify other employees of the allegedly unlawful Notice of Union Membership Requirement cannot be sustained. Appellant asserts that 45 U.S.C. § 152, Fifth requires that such notification be given if a carrier has illegally coerced union

membership. We do not read this provision, however, as having any relevance to the question of remedy. 45 U.S.C. § 152, Fifth does no more than proscribe particular conduct. The notification requirement applies only to contracts "enforced prior to the effective date of this chapter . . . ." Evidently, upon the passage of the Act, Congress sought a mechanism to inform workers of their newly acquired rights.

Appellant's argument that the notification requirement has continuing vitality since it was not repealed during the 1951 amendments proves too much. If Congress had intended to breathe new life into the requirement, it certainly could have adjusted the wording that unambiguously addresses contracts of a much older vintage than the one we consider.

582

*Odegaard,* 416 U.S. 312, 316, 94 S.Ct. 1704, 1705, 40 L.Ed.2d 164, 168 (1974). "The reasonable likelihood that challenged conduct or laws will recur is not enough to fulfill this segment of the repetition/evasion exception [to the mootness doctrine]. The disputed action must be likely to affect again the litigants in the original lawsuit." *Williams v. Alioto,* 549 F.2d 136, 144 (9th Cir. 1977). *See also Sosna v. Iowa,* 419 U.S. 393, 399, 95 S.Ct. 553, 557, 42 L.Ed.2d 532, 540 (1975). Finding no likelihood that the practices at issue will ever impact upon Vernon Marden, we find that his claims for declaratory and injunctive relief are moot.[5]

Accordingly, we affirm the district court's grant of judgment for defendant's on Marden's action for money damages. Insofar as the court below adjudicated his declaratory and injunctive claims, this case has been rendered moot and is remanded to the district court with directions to vacate its judgment and dismiss appellant's complaint. *Preiser v. Newkirk,* 422 U.S. 395, 403, 95 S.Ct. 2330, 2334–2335, 45 L.Ed.2d 272, 279 (1975); *Scott v. Jones,* 492 F.2d 130 (5th Cir. 1974).

AFFIRMED IN PART AND REMANDED.

---

**5.** We point out that illegal requirements of Union membership imposed by a carrier can lead to stiff criminal sanctions. 45 U.S.C. § 152, Tenth.