**James Lee HARPER, Plaintiff,**

v.

**G. William MILLER et al., Defendants.**

**Civ. A. No. 76–2332.**

United States District Court, District of Columbia.

March 28, 1980.

---

Michael E. Zeldin of Community Legal Clinic of George Washington University's National Law Center, Washington, D. C., for plaintiff.

David H. Shapiro, Asst. U. S. Atty., Washington, D. C., for defendant; Margery Waxman, Gen. Counsel and Lydia B. Parnes, Trial Atty., Washington, D. C., of counsel.

## MEMORANDUM

### I

SIRICA, District Judge.

In its earlier Opinion in this case, *Harper v. Blumenthal*, 478 F.Supp. 176 (1979), this Court denied defendant Bruce's motion for summary judgment in which he argued that the doctrine of official immunity protected him from liability. The Court ruled that Bruce was not entitled to absolute immunity under the standard established in *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), and that:

> [a] decision on Bruce's qualified immunity defense . . . would require an investigation into his motives, belief in the truth of the facts he relied upon in making his decision, and his objectively evaluated conformance with known procedures and rights . . .

*Harper v. Blumenthal*, 478 F.Supp. 176, 184 (1979), thus preventing resolution of the matter on a motion for summary judgment.

In oral argument on another question several months later defendant Bruce requested permission to renew his motion for summary judgment on the question of qualified immunity. Mindful of the Supreme Court's urging that the immunity question be resolved whenever possible in the early stages of a lawsuit, *Butz, supra*, 438 U.S. at 507–508, 98 S.Ct. at 2911, this Court granted the request.

Having reviewed defendant Bruce's renewed motion for summary judgment, however, this Court has found nothing presented therein that would necessitate a change in its earlier conclusion that "the good faith issue . . . requires a resolution of questions of fact hotly contested by the parties, a function not appropriate on a motion for summary judgment." *Harper v. Blumenthal, supra*, 478 F.Supp. at 184.

■ Defendant attaches several affidavits and exhibits to his motion and asserts, essentially, that his version of the events in question is conclusive. Granting that the affidavits are presented under oath, the Court still may not resolve a motion for summary judgment on the basis that the defendant disagrees with the plaintiff. Once it is established that there are genuine issues as to material facts, the motion for summary judgment must be denied. Fed.R. Civ.P. 56(c).

■ Moreover, plaintiff in his opposition to the motion has pointed out several inconsistencies in the affidavits. For instance, concerning the incident on October 20, 1975, in which plaintiff allegedly threatened fellow employee, Otis Moses, Bruce avers in his October 29, 1979, affidavit that he was an eye witness to the threat. Bruce Affidavit, ¶ 5(a) at 2–3. Yet, in his deposition testimony taken January 31, 1978, he stated under oath that he did not witness the incident. Deposition of Melvin A. Bruce at 54.

Bruce, in his reply brief, does not attempt to explain this discrepancy, but rather argues that it is immaterial whether or not he witnessed the event. Reply of Defendant Melvin A. Bruce (Defendant's Reply) at 5 (filed Dec. 7, 1979). Since good faith is an issue, however, and involves questions of intent and subjective attitude, *Halperin v. Kissinger*, 606 F.2d 1192, 1209 (D.C. Cir., 1979), any facts bearing on Bruce's credibility are important to the consideration of his motives in firing plaintiff.

Additionally, plaintiff has well demonstrated that there are disputed issues of fact concerning the coin dumping incident which, he contends, led to his dismissal. Defendant attempts to establish through affidavits that the dumping of coin was a routine practice and therefore could not have provided meat for an exposé by plaintiff of improper procedures. Defendants' Motion for Summary Judgment on All Claims Asserted Against Defendant Melvin Bruce (Defendant's Motion) at 11 (filed Oct. 29, 1979). Plaintiff, on the other hand, points to testimony in depositions and affidavits establishing that dumping of dimes, the coin at issue, was not routine and could only be authorized by express written permission from Bruce's superior. Plaintiff's Opposition to Defendant's Motion for Summary Judgement (Plaintiff's Opposition) at 27–29 (filed Nov. 13, 1979). Since this is the issue that allegedly motivated plaintiff's dismissal, a dispute about it alone is sufficient to prevent the Court from entering a summary judgment.

Accordingly, this Court will deny defendants' renewed motion for summary judgment as to all claims against defendant Bruce.

## II

In its earlier Opinion this Court also observed that although defendants had violated plaintiff's fifth amendment rights by failing to grant him a post-termination hearing, it appeared that he might no longer be entitled to any remedy since the stigmatizing charges had already been removed from his personnel file.[1] Consequently, the

---

1. Plaintiff had sought several remedies on his fifth amendment claim, including: a declaratory judgment, reinstatement with back pay (or reinstatement pending a decision following the requested agency hearing); compensatory and consequential damages against the defendants sued in their official capacity; and damages against defendant Bruce sued in his individual capacity. The Court ruled that reinstatement with or without back pay was not an available remedy in this type of case, and that the doctrine of sovereign immunity barred the damage claims against defendants sued in their official capacities.

In addition, the Court expressed doubt about the chances for recovery on the individual capacity claim against Bruce, since he would have been liable only if he had been the party responsible for denying plaintiff a hearing. Plaintiff has since conceded this issue by failing to oppose defendants motion to dismiss the claim. See Local Rule 1–9(d); Plaintiff's Opposition at 30–32.

The Court did recognize that in ordinary circumstances plaintiff would have been entitled to injunctive relief ordering a post-termination hearing to allow him the opportunity to present his case and clear his name. It questioned, however, whether there would be any profit in

Court raised the possibility that the fifth amendment claim might be moot.

Plaintiff, in his supplementary brief on this point, opposes a determination of mootness. He argues that while there may be no coercive relief due him as a result of this particular violation of his rights by defendants, there is no guarantee that they will not harm him, or others, in the same way in the future. While he does not assert that defendants have intentionally attempted to moot this case by removing the charges from his file in order to prevent a binding judgment from issuing against them, his argument suggests that their actions could have that effect. The result, he adds, would be that "[d]efendants would be free to engage in the same kind of unconstitutional conduct in the future toward this plaintiff or toward others." Plaintiff's Opposition at 30. To foreclose this possibility, plaintiff requests the Court to issue a declaratory judgment striking down the statute and regulations permitting the dismissal of a probationary employee for stated reasons of misconduct without a prior hearing. *Id.*

■ A decision to issue a declaratory judgment would require the Court to decide first that the fifth amendment claim is not moot, and second, since issuance of declaratory relief is discretionary with the Court,[2] that the case is appropriate for a declaratory judgment. Since the Court has concluded that the fifth amendment claim is moot, however, it does not reach the second question.

While plaintiff expresses his concern that in the future defendants will violate not only his rights again, but also those of others, it is clear that he has standing only to seek judicial protection for his own rights. *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343

(1975); *Marden v. Int'l Ass'n of Machinists*, 576 F.2d 576, 581–82 (5th Cir. 1978). Thus, the possibility that others may be harmed by the same conduct will not save his case from a determination of mootness.

In advancing his argument that this case is not moot, plaintiff relies on the doctrine articulated in *United States v. W. T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953), and *United States v. Phosphate Export Ass'n*, 393 U.S. 199, 202–04, 89 S.Ct. 361, 363–64, 21 L.Ed.2d 344 (1968). The *Phosphate* case, upon which plaintiff's argument draws most heavily, involved eleven corporate members of an association formed to sell phosphates to Korea in conjunction with a U.S. Aid to International Development (AID) program. Although such a course of conduct was legitimate in certain circumscribed circumstances, the Justice Department attacked this particular association's conduct as concerted activity violative of the Sherman Act and sought injunctive relief.

During the course of the litigation AID promulgated regulations which the defendants contended made it uneconomical for their association to remain in existence. The association therefore dissolved itself, and the defendants subsequently argued that the case should be dismissed as moot.

The Supreme Court, observing that the AID regulation did not cover all contracts upon which such an association might bid, ruled that the dissolution of the association did not necessarily moot the case. It held that:

> The test for mootness in cases such as this is a stringent one. Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave "[t]he defendant . . . free to return to his

holding such a hearing now that the misconduct charges had been removed from his personnel file. Plaintiff has since conceded at oral argument that a post-termination hearing would serve no purpose at this point.

All possibilities for coercive relief having been eliminated, the only remedy now available to plaintiff is declaratory relief.

2. 28 U.S.C. § 2201 (1976) (in a case of actual controversy within its jurisdiction a federal court *may* grant a declaratory judgment); *Zemel v. Rusk*, 381 U.S. 1, 19, 85 S.Ct. 1271, 1282, 14 L.Ed.2d 179 (1965); *National Wildlife Federation v. United States*, No. 78–1976, slip op. at 12–14 (D.C. Cir. Feb. 11, 1980).

old ways." *United States v. W. T. Grant Co.*, 345 U.S. 629, 632, [73 S.Ct. 894, 897, 97 L.Ed. 1303] (1953).

*United States v. Phosphate Export Ass'n, supra* at 203, 89 S.Ct. at 364.

The Court was concerned that the defendants' cessation of their allegedly illegal conduct was merely a sham to deprive it of jurisdiction. Accordingly, it structured its ruling in such a way that a conclusion of mootness could be reached if it became apparent that "the allegedly wrongful behavior could not reasonably be expected to recur." *Phosphate, supra*, 393 U.S. at 203, 89 S.Ct. at 364. As the Court held in *United States v. W. T. Grant Co., supra*:

> . . . the moving party must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive. . . . To be considered are the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations.

345 U.S. at 633, 73 S.Ct. at 898.

In the case at bar, there is no suggestion that defendant's action in removing the stigmatizing charges from plaintiff's file is a mere sham in the sense that they intend to reinsert the charges in his file once this Court has lost jurisdiction. To the contrary, it is completely clear at this point that the relief plaintiff has received from defendants on his fifth amendment claim, such as it is, is final and conclusive.

What plaintiff does suggest is that on some future set of facts an agency employer may again violate his fifth amendment rights in a similar fashion. In other words, if plaintiff were to seek and gain federal employment again, if he were fired again while still a probationary employee, if misconduct charges were included in his personnel file, if those charges were stigmatizing, and if he were not granted a post-termination hearing, then he would again have suffered the same injury. Although this sequence of events is certainly not impossible of occurrence, it impresses the Court as a highly contingent possibility, not a "cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *United States v. W. T. Grant Co., supra* at 633, 73 S.Ct. at 898.

Plaintiff emphasizes the language in the *Phosphate* and *W. T. Grant* cases allocating the burden of proof to the defendant to show the unlikelihood of recurrence, but fails to note the distinction between those cases and this one. In both those cases, the eventuality of a recurrence lay in the direct control of the defendants: in *W. T. Grant* the individual defendant, Hancock, would have been free to resume the corporate directorships in question; in *Phosphate* the corporate defendants would have been free to re-form the challenged export associations.

In this case defendants have no such direct control. There are several intervening contingencies that would have to occur before they could repeat the challenged conduct. Principal among these are that plaintiff would have to obtain federal employment and that, once he had done so, he would have to involve himself in a situation that would result in his being fired while still a probationary employee.[3] These are conditions precedent to a recurrence of the challenged conduct, and they are conditions within the control of plaintiff, not defendants.

The conclusion that the Court must reach, then, is that the defendants are not free to resume the challenged conduct at their own instance and that therefore, because they lack direct control of the situation, they

---

**3.** It should be emphasized that the challenged conduct is the inclusion of misconduct charges in plaintiff's personnel file without offering him an opportunity to rebut them in a post-termination hearing. Plaintiff has not alleged that there exists any conspiracy on the part of defendants to prevent him from regaining federal employment, or to have him fired should he do so. Consequently, this Court must assume that plaintiff's obtaining and retaining federal employment are events within his own sphere of control.

need not be held to prove that there is no reasonable probability of recurrence. Rather, it is for plaintiff to show that relief is needed. *United States v. W. T. Grant Co., supra* at 633, 73 S.Ct. at 897; *O'Shea v. Littleton,* 414 U.S. 488, 494–96, 94 S.Ct. 669, 675–76, 38 L.Ed.2d 674 (1974).

The Court concludes that plaintiff has wholly failed to do so. At this time the possibility of recurrence is completely speculative, and indeed, should there be a recurrence, it is likely that it would be on a totally different set of facts, requiring the Court to balance completely different considerations. This is neither a situation that argues for a determination of nonmootness,[4] nor one that would require a court to exercise its discretion to grant declaratory relief, even if the case were not moot.

Accordingly, the Court concludes that plaintiff's case on the fifth amendment claim is moot and that defendant Bruce's motion for summary judgment on this issue should be granted.

ORDERED that this case is certified to United States Magistrate Jean F. Dwyer for pretrial to be held on April 29th, 1980, at 10:00 a. m.

---

**4.** The mootness doctrine articulated in the *Phosphate* and *W. T. Grant* cases differs from the "capable of repetition, yet evading review" doctrine of *Southern Pacific Terminal Co. v. I. C. C.,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911) only slightly. In the latter, complete judicial review is prevented by the march of events beyond the direct control of the parties; in the former, it is prevented by a party's voluntary action. Beyond that the two doctrines are guided by the same logic, and that logic requires not only a reasonable likelihood of recurrence, but also a reasonable expectation that "the *precise* situation again may arise with respect to the same party." *National Wildlife Federation v. United States,* No. 78–1976, slip op. at 19 n.15 (D.C. Cir. Feb. 11, 1980) (emphasis added). *Accord, Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975); *Chamber of Commerce of the United States v. Dept. of Energy,* No. 79–1213, slip op. at 4 n.2 (D.C. Cir. Feb. 28, 1980); *Marden v. Int'l Ass'n of Machinists,* 576 F.2d 576, 581–82 (5th Cir. 1978). Even if plaintiff were to be harmed again by defendants, it is highly unlikely that it would be under precisely the same circumstances.

Such a requirement is especially congenial to a case such as this where it would be difficult to formulate broad-based declaratory relief because of the difficulty inherent in arriving at a precise definition of the term "stigmatizing."