

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-15-2008

# USA v. Rivera

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2676

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Rivera" (2008). *2008 Decisions*. Paper 1748.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1748

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-2676
_____

UNITED STATES OF AMERICA

v.

EDWIN RIVERA,

Appellant.

_____

On Appeal from United States District Court
for the District of Eastern Pennsylvania
D.C. No. 05-cr-00252-2
District Judge: Honorable Legrome D. Davis

_____

Submitted Under Third Circuit LAR 34.1(a)
January 8, 2007

Before: FISHER, HARDIMAN and ALDISERT, *Circuit Judges*.

(Filed:   January 15, 2008)

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Petitioner Edwin Rivera challenges the sufficiency of the evidence supporting his convictions for mail fraud, wire fraud, and aiding and abetting.

I.

Because we write for the parties, we recite only the facts essential to our decision. Rivera was employed by various home improvement companies that were owned in part by his co-defendant, Brad Marks. After Marks pleaded guilty to mail and wire fraud, he agreed to cooperate with the government and was the principal witness against Rivera. At Rivera's trial, Marks described how he and Rivera defrauded homeowners by convincing them to pay in advance the entire cost of their home improvement jobs. Marks said that he and Rivera used funds to pay personal expenses, salaries, utilities, and rent, and that anything left over would be used to perform work for the customer "that was screaming the loudest to get their job done." (App. 297).

Marks also provided details of Rivera's role in the companies, testifying that Rivera circumvented the "staged funding" process by employing a number of illicit tactics. One such tactic involved the use of "hold checks," which were company checks made payable to both the customer and the company. Marks explained that if a customer was reluctant to give the company the staged funding checks up front, the company would offer the customer a hold check, claiming the customer could then cash the check if the work was not completed. This representation was false, however, because the customer could not cash the hold check without the company's approval, which was never given. Marks testified that, although it was his idea to use hold checks, Rivera

2

actually delivered them to the customers and was "very aware of the situation that the checks would not be able to be used by the consumer." (App. 307).

Marks also described an incident in which he and Rivera "spiked" a job. On this occasion, after a customer decided to cancel a contract, Rivera arranged for a crew to go to the house when no one was present except the customer's seventeen year-old nephew. The crew demolished the customer's kitchen with the expectation that the customer would have no choice but to proceed with the job. Marks testified that this scheme worked as planned and the customer was given a hold check.

Marks also testified that Rivera pressured customers to turn over their checks and badgered them when they were reluctant to do so. A customer testified that Rivera "was coming over to my house, he was always coming at night and the afternoon - he was constantly calling me at work." (App. 51). Other customers testified that they trusted Rivera because of their common Hispanic ethnicity while still others relinquished staged funding checks because Rivera told them he was a Christian man.[1]

III.

---

[1] One customer even lied to a bank at Rivera's request, stating that work on his home was complete even though it had not yet begun. When asked why he trusted Rivera despite the deceit, the customer replied "because he told me he was serious, trustworthy, and that he was Christian." (App. 116).

3

We view the evidence in the light most favorable to the verdict winner and will affirm "if any rational juror could have found the elements of the crime beyond a reasonable doubt." *United States v. Cartwright*, 359 F.3d 281, 285-86 (3d Cir. 2004).

Rivera claims that there was insufficient evidence to establish that he had the requisite intent to engage in mail fraud, wire fraud, and aiding and abetting. In particular, Rivera contends that he was merely a salesman rather than an officer of the companies; that the companies were legitimate home improvement businesses rather than fraudulent schemes; and that the companies' alleged wrongdoing and ultimate failure was the product of mismanagement by Marks and other officers.

Though theoretically plausible, Rivera's contentions are contrary to much of the evidence presented against him at trial. Marks testified that he and Rivera discussed the fact that the money received from a customer would not be used to pay for work on that customer's house; that Rivera would knowingly deliver hold checks to customers as fictitious security for staged funding checks; and that Rivera would spike jobs to force customers to go ahead with home improvement work. Furthermore, a customer testified that Rivera convinced him to lie to a bank, falsely telling the bank that Rivera's company had completed the promised home improvement work so that the company would be paid. Viewing this evidence in the light most favorable to the Government, it is clear that a rational juror could conclude that Rivera had the requisite intent to defraud.

In addition, we are unpersuaded by Rivera's reference to *United States v. Pearlstein*, 576 F.2d 531 (3d Cir. 1978). In *Pearlstein*, we reversed the convictions of

4

salesmen working for a pen company which had engaged in fraud, finding that there was insufficient evidence to establish that the salesmen knew of the fraud being perpetrated by the company. In contrast to the salesmen in *Pearlstein,* Rivera was identified by Marks and customers as not only aware of, but an active participant in, the fraudulent scheme.

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.